[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 17, 1996
I. FACTS
On December 9, 1995, the defendant, Angel Concepcion, was arrested and subsequently charged with robbery in the first degree and conspiracy to commit robbery in the first degree, both Class B Felonies. On December 11, 1995, in accordance with Public Acts 1995, No. 95-225 ("P.A. 95-225"), § 13(a), the defendant was transferred from Juvenile Court to Superior Court.
On February 13, 1996, the defendant filed a motion to dismiss charging that the transfer procedure in P.A. 95-225, § 13(a), is unconstitutional, thereby depriving the court of subject matter jurisdiction. Contemporaneously, the defendant filed a second motion to dismiss alleging that P.A. 95-225, § 13(a), is unconstitutional because the prosecutor, empowered to file a motion to transfer a defendant back to juvenile Court, has unbridled and unreviewable power which can be exercised in an arbitrary and capricious manner thereby usurping judicial power. On March 7, 1996, the defendant filed a memorandum in support of his motions to dismiss. On March 25, 1996, the State filed a memorandum in opposition to the defendant's motions to dismiss. CT Page 4405-NN
II. STANDARD
Section 815 of the Practice Book provides that "[t]he following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the indictment or information: . . . (8)[a] Claim that the law defining the offense charged is unconstitutional or otherwise invalid . . ."
The defendant's motions to dismiss challenge the constitutionality of P.A. 95-225, § 13(a), pursuant to which he was automatically transferred from Juvenile Court to Superior Court. Section 13(a) of Public Act 95-225 provides that "[t]he court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the superior court the case of any child charged with the commission of a capital felony, a class A or B felony or a violation of Section 53a-54d, provided such offense was committed after such child attained the age of fourteen years. The child shall be arraigned in the regular criminal docket of the superior court at the next court date following such transfer. The file of any case so transferred shall remain sealed until the tenth day following such arraignment unless the state's attorney has filed a motion pursuant to this subsection in which case such file shall remain sealed until the court makes a decision on the motion. A state's attorney may, not later than ten working days after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony to the docket for juvenile matters for disposition in accordance with the provisions of this chapter. The court sitting for the regular criminal docket shall, after hearing and not later than ten working days after the filing of such motion, decide such motion." The defendant contends that P.A. 95-225, § 13(a), violates both the federal and state constitutions. Each will be considered separately.
 A. Federal Constitution (1) Due Process
In his memorandum in support of his motions to dismiss, the defendant, relying on Kent v. United States, 383 U.S. 541 (1966), contends that the automatic transfer provision of P.A. 95-225, § 13(a), violates the defendant's federal due process rights.[1] In opposition, the State argues that because Kent v.CT Page 4405-OOUnited States, supra, 383 U.S. 541, "applies only to discretionary transfers under a 1966 District of Columbia statute[,]" its holding, requiring a hearing before the defendant is transferred from juvenile court to adult court, does not apply to P.A. 95-225, § 13(a). (State's Opposition to the Defendant's Motions to Dismiss I and II, p. 4.) The State, therefore, contends that P.A. 95-225, § 13(a), which automatically transfers the defendant from Juvenile Court to Superior Court without a hearing, does not violate the defendant's due process rights. In addition, the State argues that "juvenile status is not a right but a benefit conferred by the legislature" and, therefore, P.A. 95-225, § 13(a), does not violate the defendant's due process rights. (State's Opposition to the Defendant's Motions to Dismiss I and II, p. 8.)
"There are two elements which must be established in order to find a due process violation. First, because not every liberty interest is protected, [the defendant] must establish that he has a liberty interest that comes within the ambit of thefourteenth amendment . . . If it is determined that a protected liberty interest is implicated, then the second element that must be addressed is what procedural protections are due." (Citations omitted.) State v. Patterson, 236 Conn. 561, 568-69 (1996). In the present case, the determination of whether juvenile status is a constitutionally protected liberty interest is dispositive. Courts have interpreted juvenile status as a legislative determination. not a constitutional right. United States v.Quinnones, 516 F.2d 1309 (1st Cir.), cert. denied, 423 U.S. 882
(1975); State v. Anonymous, 173 Conn. 414, 417-18, 378 A.2d 528
(1977). Accordingly, because juvenile status is not considered a liberty interest, and, therefore, is not afforded constitutional protection, P.A. 95-225, § 13(a), does not violate the defendant's due process rights. Nevertheless, this court will address the defendant's contention that Kent v. United States,supra, 383 U.S. 541, is controlling in the present case.
In Kent v. United States, id., the United States Supreme Court considered a constitutional challenge to the District of Columbia's Juvenile Court Act, 11 D.C. Code § 1553, which permitted the Juvenile Court to waive jurisdiction over a child. This provision provided that "[i]f a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive CT Page 4405-PP jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult . . ." Kent v.United States, supra; 383 U.S. 547-48. In evaluating this statute the Court found that because the Juvenile Court had original and exclusive jurisdiction, due process entitled the defendant to a hearing prior to transfer from juvenile court to adult court.Id., 556-57. In the present case, the defendant contends that, similarly, he is entitled to a hearing and, therefore, the automatic transfer provided in P.A. 95-225, § 13(a), violates his due process rights.
In United States v. Bland, 472 F.2d 1320 (D.C. Cir. 1972), the Court of Appeals was presented with a similar constitutional challenge to a statute defining the term "child." This statute, 16 D.C. Code § 2301, excluded from the term "child" persons "16 and older charged by the United States attorney with murder, forcible rape, robbery while armed, burglary in the first degree, or assault with intent to commit one of these offenses, or any such offense and a properly joinable offense." United States v.Bland, supra, 472 F.2d 1333. The Court found that because the Juvenile Court did not have original jurisdiction, the statute at issue was distinguishable from the former juvenile statute contested in Kent v. United States, supra, 383 U.S. 541, 11 D.C. Code § 1553. United States v. Bland, supra, 472 F.2d 1336 n. 26.
In Woodward v. Wainwright, 556 F.2d 781, 782 n. 1 (5th Cir. 1977), the Court of Appeals addressed a due process challenge to Fla. Stat. § 39.02(5)(c) which provides, in relevant part, that "[a] child of any age charged with a violation of Florida law punishable by death or by life imprisonment shall be subject to the jurisdiction of the court as set out in § 39.06(7) unless and until an indictment on such charge is returned by the grand jury, in which event and at which time the court shall be divested of jurisdiction under this statute and the charge shall be made and the child shall be handled in every respect as if he were an adult. No adjudicatory hearing shall be held within fourteen days from the date that the child is taken into custody unless the state attorney advises the court in writing that he does not intend to present the case to the grand jury or that he has presented it to the grand jury but that the grand jury has declined to return an indictment." The Court found Kent v.United States, supra, 383 U.S. 541, distinguishable. "Kent concerned a statutory duty by a juvenile court judge to investigate and hear CT Page 4405-QQ matters relevant to the waiver of juvenile jurisdiction, whereas this case concerns the prosecutor's discretionary act to present his case to a grand jury." Woodward v. Wainwright, supra,
556 F.2d 784. The Court also noted that juvenile status is not a constitutional right but a legislative grant. Id., 785. The Court, finally, held that Fla. Stat. § 39.02(5)(c), which automatically divests the juvenile court of its jurisdiction upon indictment of certain charges, does not violate due process by failing to require a hearing prior to transfer of the defendant from juvenile court to adult court. Id., 787.
Several other states have rejected similar challenges to statutes that give the adult court jurisdiction over the juvenile when specific crimes were charged. E.g., People v. P.H.,582 N.E.2d 400 (Ill. 1991); Vega v. Bell, 419 N.Y.S.2d 454 (1979);State v. Berard, 401 A.2d 448 (R.I. 1979). In addition, a federal statute, the Federal Youth Corrections Act, has withstood claims that due process requires an initial hearing. E.g., Cox v.United States, 473 F.2d 334 (4th Cir.), cert. denied, 414 U.S. 869
(1973).
Section 13(a) of P.A. 95-225 automatically transfers, without discretion, juveniles aged fourteen and older charged with class A and B felonies from Juvenile Court to Superior Court. Based on the foregoing application of P.A. 95-225 § 13(a) does not violate the defendant's due process rights.
(2) Equal Protection
In his memorandum in support of his motions to dismiss, the defendant concedes that he does not have a constitutional right to juvenile status. Nevertheless, the defendant argues that P.A. 95-225, § 13(a), violates the equal protection clause of the United States constitution[2] by permitting the prosecutor to arbitrarily select, without the benefit of guidelines or standards, which fourteen and older defendants charged with a B felony remain in Superior Court and which are transferred back to Juvenile Court. The defendant argues that "[t]he legitimacy of a goal cannot justify arbitrary means . . . Without standards for transfer and a judicial check on the process, the Act can lead to arbitrary, capricious and discriminatory practices." (Defendant's Memorandum in Support of Defendant's Motion to Dismiss I and Motion to Dismiss II, p. 10-11.) In support of this argument, the defendant focuses on a Delaware statute, addressed in Hughes v.State, 653 A.2d 241 (Del. 1994), and a Utah statute, addressed in CT Page 4405-RRState v. Mohi, 901 P.2d 991 (Utah 1995). In opposition, the State agrees that because the defendant does not contend that P.A. 95-225, § 13(a), implicates a fundamental right or affects a suspect group, P.A. 95-225, § 13(a), should be analyzed under a rational basis test. Nevertheless, the State contends that under this test, P.A. 95-225, § 13(a), does not violate the defendant's equal protection rights and is, therefore, constitutional.
There is a three-tiered set of standards for judicial review of equal protection claims. The first tier employs the strict scrutiny test. This test applies to "suspect classifications" and legislation affecting fundamental rights. Under the strict scrutiny test, there must be a compelling state interest in the legislative classification. City of Richmond v. J.A. Croson,488 U.S. 467 (1989).
The second tier, intermediate scrutiny, uses an `exacting scrutiny' or "strict rationality" test. This test applies in cases involving such classifications as those based on gender and illegitimacy. Under the "exacting scrutiny" or "strict rationality" tests, classifications "must serve important governmental objectives and must be substantially related to achievement of those objectives." Craig v. Boren, 429 U.S. 190,198 (1976).
The final tier uses the rational basis test. This test applies to all other claims including economic regulations and nonsuspect classifications. "[I]t is not enough, under the Equal Protection Clause, to say that the legislature sought to terminate certain claims and succeeded in doing so, for that is `a mere tautological recognition of the fact that [the legislature] did what it intended to do.' . . . This Court still has an obligation to view the classificatory system, in an effort to determine whether the disparate treatment afforded the affected classes is arbitrary." (Citation omitted.) Logan v.Zimmerman Brush Co., 455 U.S. 422, 441 (1981). Therefore, "the Equal Protection Clause imposes a requirement of some rationality in the nature of the class singled out." (Internal quotation marks omitted.) Id., 442. See also State v. Campbell, 224 Conn. 168,186, 617 A.2d 889 (1992).
In the present case, juvenile status is not a fundamental right. United States v. Quinnones, supra, 516 F.2d 1309; State v.Anonymous, supra, 173 Conn. 417-18. In addition, juveniles are CT Page 4405-SS not a suspect class. City of Richmond v. J.A. Croson, supra,488 U.S. 469. Also, although the defendant may argue that he has a liberty interest in not being incarcerated or suffering increased penalties, these due process concerns are satisfied by, inter alia, a probable cause hearing and ultimately, a trial. Therefore, such concerns would be unfounded. Based on the foregoing, the rational basis test applies in the present case.
Under the rational basis test, "if the State's purpose is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship which is not difficult to establish."Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 881 (1984). See also Florestal v. Government Employees Ins. Co., 236 Conn. 299,314-16 (1996). Moreover, "`the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as `the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" Bordenkircher v.Hayes, 434 U.S. 357, 364 (1978). See also State v. Grullon,212 Conn. 195, 217, 562 A.2d 481 (1989).
The essence of the defendant's claim is that the combination of the automatic transfer of defendants charged with B felonies to Superior Court and the prosecutor's standardless discretion to determine who should be transferred back to Juvenile Court creates two classes of defendants: (1) those charged with B felonies who are adjudicated in Superior Court, and; (2) those charged with B felonies who are adjudicated in Juvenile Court.
Regarding one transfer, under the rational basis test, the equal protection clause requires a legitimate government interest rationally related to that goal. There is a legitimate government interest in holding juveniles accountable for their behavior and protecting the community. The legislative decision to automatically transfer juveniles charged with class A and B felonies to Superior Court is rationally related to these goals. Therefore, the automatic transfer provision of P.A. 95-225, § 13(a), does not violate the defendant's equal protection rights. Regarding the discretion given to the prosecutor to transfer a defendant back to Juvenile Court, while the prosecutor files a motion to transfer the defendant back to Juvenile Court, it is the decision of the court whether to grant that motion. "It is fundamental that wide discretion is vested in a state's legislative body relating to the establishment of reasonable CT Page 4405-TT classifications for purposes of promoting the health, safety and welfare of those within its jurisdiction." Lamb v. Brown,456 F.2d 18, 19 (10th Cir. 1972). "State legislative bodies are to be `given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious.'" Id. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (Internal quotation marks omitted.) Florestal v. Government Employees Ins. Co., supra,236 Conn. 316.
Based on the foregoing, P.A. 95-225, § 13(a), does not violate the defendant's equal protection rights. Nevertheless, this court will address the defendant's contention that Hughes v.State, supra, 653 A.2d 241, and State v. Mohi, supra, 901 P.2d 991, are dispositive in the present case, and therefore, compel a finding that the defendant's equal protection rights have been violated.
In Hughes v. State, supra, 653 A.2d 241, the Delaware Supreme Court considered a constitutional challenge to an amendment to10 Del. C. § 1010, which determined whether the defendant fell within the jurisdiction of the Family Court or Superior Court. The original statute gave the Family Court jurisdiction over juveniles, with two exceptions. "First, under Section 1010(a)(1), children, regardless of age, who are charged with the most serious felonies, as designated by the statute, are prosecuted as adults. Second, under Section 1010(a)(2), the Family Court has the discretion to transfer the case of a child over sixteen years of age to the Superior Court for trial as an adult if the court concludes that the child is not amenable to the Family Court processes. Under the statute, the Family Court conducts a so-called amenability hearing, initiated upon motion of the Attorney General or by the court, sua sponte, to determine independently whether the child will benefit from the `rehabilitative processes of the Court.' § 1010(c)." Id., 244-45. In addition, "[i]n 1971, the State Assembly created a mechanism, now known as the `reverse amenability' process, in which those children coming within the jurisdiction of the Superior Court may be transferred to the Family Court when adjudication in that CT Page 4405-UU forum is proper." Id., 245.
The amendment to 10 Del. C. § 1010 provided that "if a child reaches his eighteenth birthday prior to an adjudication on a charge of delinquency arising from acts which would constitute a felony were he charged as an adult under the laws of this State, then the Family Court shall retain jurisdiction for the sole purpose of transferring the matter to the Superior Court for prosecution as an adult." Id., 247. This provision "explicitly eliminates the reverse amenability process in the Superior Court under Section 1011 for those children transferred to that court for trial as adults." Id.
The Court noted that "[t]he presumptive classification of children within the jurisdiction of the Family court under Section 1010 withstands constitutional scrutiny largely because an amenability hearing ensures an impartial judicial determination, which is informed by specific criteria, of whether a child is suitable to the rehabilitative processes available in Family Court." Id., 248 In addition, the Court found that "judicial review of the charging decision is essential for those children who are prosecuted as adults." Id., 250. The Court concluded that "the distinction is patently arbitrary and bears no rational relationship to a legitimate government interest."Id., 252. The Court, therefore, held that the amendment violates equal protection of the laws. Id., 253.
Summarily, in Hughes v. State, supra, 653 A.2d 241, the Court found that judicial review was essential in protecting the defendant's rights. However, Hughes v. State, id., is distinguishable from P.A. 95-225, § 13(a), in two ways. First, the Delaware statute gives the Family Court original and exclusive jurisdiction over juveniles, implicating subject matter jurisdiction. In contrast, P.A. 95-225, § 13(a), does not implicate subject matter jurisdiction. "[Q]uestions relating to the propriety of the transfer of a juvenile from the docket for Juvenile Matters to the regular criminal docket do not implicate the Superior Court's subject matter jurisdiction." State v.Kelly, 206 Conn. 323, 332, 537 A.2d 483 (1988). "Rather than implicating subject matter jurisdiction, issues relating to transfers between the juvenile and the regular criminal docket involve considerations that are analogous to those of the law of venue." Id.
Second, the amendment to the Delaware statute rescinded CT Page 4405-VV juvenile status automatically upon the juvenile reaching eighteen years of age, putting the defendant at the "mercy of the calendar." In contrast, P.A. 95-225, § 13(a), automatically transfers individuals charged with A and B felonies to Superior Court.
In addition, a recent Connecticut Superior Court decision found that "this view is contra to the weight of authority in the federal circuits and other states." State v. Jose C., No. 96-CR6421185, 16 CONN. L. RPTR. 419, 1996 WL 165549, p. 8 (Conn.Super.Ct. March 21, 1996). Based on the foregoing, the court finds that the equal protection violations found in Hughes v.State, supra, 653 A.2d 241, do not exist with P.A. 95-225, § 13(a).
The defendant also relies on State v. Mohi, supra, 901 P.2d 997, in which the Supreme Court of Utah considered the constitutionality of a statute which "states that a certain class of juveniles will be treated one way (remain in juvenile jurisdiction) while another class of like-accused juveniles will be treated in another (singled out by prosecutors to be tried as adults.)" The Court stated that "[c]hoosing which court to life charges in has significant consequences for the offender, and the statute does not indicate what characteristics of the offender mandate that choice. The scope for prosecutor stereotypes, prejudices, and biases of all kinds is simply too great." Id.,
1003. The Court further noted that "[i]f it is the legislature's determination to have all members of a certain group of violent juveniles (such as repeat offenders, those who use guns, etc.) tried as adults, it is free to do so. However, the legislature may not create a scheme which permits the random and unsupervised separation of all such violent juveniles into a relatively privileged group on the one hand and a relatively burdened group on the other." Id. Accordingly, the Court found that Utah Code Ann. § 78-3a-25 violated the defendant's equal protection rights. Id., 1004.
The holding of State v. Mohi, supra, 901 P.2d 991, is distinguishable from the present case because P.A. 95-225. § 13(a), does not allow the prosecutor to choose where to file charges. Rather, juveniles aged fourteen and older charged with A and B felonies are. pursuant to P.A. 95-225, § 13(a), automatically transferred from Juvenile Court to Superior Court. In addition, although the prosecutor has discretion to file a motion to transfer the defendant back to Juvenile Court, the CT Page 4405-WW court must decide whether to grant that motion. Therefore, the equal protection violations found in State v. Mohi, supra,901 P.2d 991, do not exist with P.A. 95-225, § 13(a).
Based on the foregoing, P.A. 95-225, § 13(a), permitting the prosecutor to file a motion to transfer the defendant back to Juvenile Court, does not violate the defendant's equal protection rights.
 B. State Constitution (1) Due Process/Equal Protection
In his memorandum in support of his motions to dismiss, the defendant applies the factors enumerated in State v. Geisler,222 Conn. 672, 684-85, 610 A.2d 1225 (1992), concluding that P.A. 95-225, § 13(a), violates the due process and equal protection clauses of the Connecticut Constitution. The State does not separately address these claims, concluding that "the defendant offers no compelling or persuasive arguments that he is entitled
to such special treatment, or that any protections due him are greater or different under the state constitution." (State's Opposition to the Defendant's Motions to Dismiss I and II, p. 2.)
"No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed." Conn. Const. Art. I, § 8. In addition, "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Conn. Const. Art. I. § 10. Finally, "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin." Conn. Const. Art. I, § 20.
These provisions grant protections similar to those found in the due process and equal protection clauses of theFourteenth Amendment of the United States Constitution. Nevertheless, this similarity between the state and federal constitutions does not prohibit the Connecticut Constitution from affording its "citizens broader protection of certain personal rights . . ."State v. Dukes, 209 Conn. 98, 112, 547 A.2d 10 (1988). CT Page 4405-XX
Because the defendant discusses several of the factors enumerated in State v. Geisler, supra, 222 Conn. 684-85, this court will separately address the validity of P.A. 95-225, § 13(a), under the Connecticut Constitution. In State v. Geisler,supra, 222 Conn. 684-85, the Connecticut Supreme Court stated that "[i]n order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach . . .; (2) holdings and dicta of this court, and the Appellate Court . . .; (3) federal precedent . . .; (4) sister state decisions or sibling approach . . .; (5) the historical approach, including the historical constitutional setting and the debates of the framers . . .; and (6) economic/sociological considerations . . ." (Citations omitted.)
(a) Textual Approach
With regard to a defendant's juvenile status, the language of the due process and equal protection clauses of the Connecticut Constitution do not indicate that the Connecticut constitution, pursuant to these clauses, gives the defendant more rights than does the federal constitution. Moreover, the Connecticut Supreme Court has "held that the due process clauses of both the United States and Connecticut constitutions have the same meaning and impose similar limitations." State v. Cruz, 212 Conn. 351, 364,562 A.2d 1071 (1989). Similarly, "the constitution of Connecticut, article first, § 20, is the state counterpart of the equal protection clause of the fourteenth amendment to the constitution of the United States. These provisions of the federal and state constitutions have the same meaning and impose similar constitutional limitations." (Internal quotation marks omitted.) Plourde v. Liburdi, 207 Conn. 412, 418, 540 A.2d 1054
(1988).
Based on the foregoing, the text of the due process and equal protection clauses of the constitution neither favors nor disfavors the conclusion that P.A. 95-225, § 13(a), is constitutional.
(b) Holdings/Dicta of State Appellate Courts
The Connecticut Supreme Court and the Appellate Court have not addressed the issue of whether P.A. 95-225, § 13(a), is CT Page 4405-YY constitutional under the Connecticut constitution. However, one superior court case that addressed this issue, State v. Jose C.,supra, 16 CONN. L. RPTR. 419, 1996 WL 165549, p. 12, held that P.A. 95-225, § 13(a) is constitutional. The Court considered federal due process and equal protection claims as well as state due process, equal protection, and separation of powers claims.
The Court began by noting that "[i]n considering the various constitutional attacks brought against Public Act 95-225 § 13(a), it is important to bear in mind that, as stated above, the entire array of special treatments accorded to juvenile offenders are, at their root, a matter of legislative grace." Id., p. 4. The Court then addressed the defendant's due process claims, distinguishing Kent v. United States, supra, 383 U.S. 541, and highlighted federal and state decisions which also concluded that due process did not require a hearing before a juvenile is automatically transferred from juvenile court to adult court.State v. Jose C., supra, 16 CONN. L. RPTR. 419, 1996 WL 165549, pgs. 4-7. Regarding the defendant's equal protection claims, the Court concluded that under the rational basis test, P.A. 95-225, § 13(a), is constitutional. Id., p. 9. The Court also distinguished Hughes v. State, supra, 653 A.2d 241, and State v.Mohi, 901 P.2d 991, which found that juvenile transfer statutes violated the equal protection clause. State v. Jose C., supra, 16 CONN. L. RPTR. 419, 1996 WL 165549, pgs. 8-9. The Court quickly dismissed the defendant's separation of powers claim on the ground that because the legislature created juvenile status, it may also modify and restrict such treatment. Id., p. 10. The Court finally considered the defendant's state constitutional claims under the factors enumerated in State v. Geisler, holding that "Public Act 95-225 13(a) comports with the Connecticut Constitution." State v. Jose C., supra, 16 CONN. L. RPTR. 419, 1996 WL 165549, p. 11.
The holding of State v. Jose C., id., concludes that P.A. 95-225, § 13(a), is constitutional.
(c) Federal Precedent
In Kent v. United States, supra, 383 U.S. 556, the Court began by noting that "[t]he Juvenile Court is vested with `original and exclusive jurisdiction' of the child." The Court therefore found that the petitioner "was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the `exclusive' jurisdiction of the Juvenile Court." CT Page 4405-ZZId., 557. Accordingly, the Court "conclude[d] that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision." Id.
A subsequent federal case, United States v. Bland, supra,472 F.2d 1329, also addressed the issue of whether due process requires a hearing before an individual is transferred from juvenile court to adult court. As an initial matter, the Court noted that "legislative classifications are entitled to a strong presumption of validity and may be `set aside only if no grounds can be conceived to justify them.'" Id., 1333-34. The Court further noted that "legislative exclusion of individuals charged with certain specified crimes from the jurisdiction of the juvenile justice system is not unusual[,]" highlighting the Federal Juvenile Delinquency Act. Id., 1334. The Court distinguished its situation from that in Kent v. United States,supra, 383 U.S. 541, finding that "the case at bar involves no initial juvenile court jurisdiction; the United States Attorney's decision to charge an individual sixteen years of age or older with certain enumerated offenses operates automatically to exclude that individual from the jurisdiction of the Family Division." United States v. Bland, supra, 472 F.2d 1336 n. 26. Accordingly, the Court held that 16 D.C. Code § 2301(3)(A) did not violate the defendant's due process or equal protection rights. Id., 1337.
A third federal case, Woodward v. Wainwright, supra, 556 F.2d 781, similarly considered whether due process requires a hearing before a juvenile is transferred from juvenile court to adult court. The Court began by distinguishing Kent v. United States,supra, 383 U.S. 541, on the ground that Kent v. United States,id., dealt with juvenile court judges statutorily given the authority to investigate waiver of juvenile jurisdiction while Fla. Stat. Section 39.02(5)(c) permits a prosecutor to go to the grand jury, subsequent to which an indictment will divest the juvenile court of its jurisdiction. Woodward v. Wainwright, supra,
556 F.2d 784. The Court, therefore, found that "the statute clearly limits [juvenile court] jurisdiction from the start."Id., 785. The Court also stated that "[i]n light of our previous holding that juvenile treatment is a creation of state legislatures, we find no federal constitutional infirmity in permitting state prosecutors to employ their discretion to seek CT Page 4405-AAA indictments against those juveniles who have allegedly committed serious crimes." Id., 786. The Court accordingly held "that Section 39.02(5)(c), Florida Statutes, divesting the juvenile court of jurisdiction over offenders indicted by a grand jury for crimes punishable by death or life imprisonment, is not unconstitutional in failing to require a hearing before a juvenile can be tried as an adult." Id., 787.
While Kent v. United States, supra, 383 U.S. 541, held that due process requires a hearing prior to transfer of a defendant from juvenile court to adult court, later federal cases evaluating statutes similar to P.A. 95-225, § 13(a). held that such statutes automatically transferring a defendant from juvenile court to adult court are constitutional. Federal precedent favors the conclusion that P.A. 95-225, § 13(a), is constitutional.
(d) Sister State Decisions
In Hughes v. State, supra, 653 A.2d 253, and State v. Mohi,supra, 901 P.2d 1004, the courts held that juvenile transfer statutes violated the defendant's constitutional rights to equal protection and due process. However, as previously discussed, these statutes are distinguishable from P.A. 95-225, § 13(a). In addition, other states have upheld juvenile transfer statutes.
In People v. P.H., supra, 582 N.E.2d 704, the Supreme Court of Illinois considered constitutional challenges to § 5-4(3.1), the "gang-transfer" provision of the Juvenile Court Act which states that "[i]f a petition alleges commission by a minor 15 years of age or older of an act which constitutes a forcible felony under the laws of this State, and if a motion by the State's Attorney to prosecute such minor under the criminal laws of Illinois for such alleged forcible felony alleges that: a) such minor has previously been adjudicated delinquent for commission of an act which constitutes a felony under the laws of this State or any other state; and b) the act which constitutes the offense was committed in furtherance of criminal activity by an organized gang, the Juvenile Judge, designated to hear and determine such motions shall, upon determining that both allegations are true, enter an order permitting prosecution under the criminal laws of Illinois."
Regarding separation of powers, the Court stated that "[w]e do not believe that the `gang-transfer' provision is an CT Page 4405-BBB infringement upon the inherent powers of the judiciary. In so concluding, we are mindful that juveniles have neither a common law nor a constitutional right to adjudication under the Juvenile Court Act . . . The Act is a purely statutory creature whose parameters and applications are defined solely by the legislature." (Citation omitted.) Id., 706.
Regarding equal protection, the Court, applying the rational basis test, stated that "[i]t is not, nor could it reasonably be, contended that the State does not have legitimate interest in curtailing crime and in promoting the safety and welfare of its citizenry . . . All too often, at the root of the tragedy and victimization is the minor gang member. The `gang-transfer' provision is the legislature's response to this growing epidemic. Clearly, the provision, by increasing the likelihood of criminal prosecution and sentencing, is aimed at decreasing the level of gang violence in our society. Thus we find that the provision is reasonably related to a legitimate government interest." Id.,
710. Accordingly, the Court found "no violation of equal protection." Id., 711.
Regarding substantive due process, the Court stated "we believe that the provision is reasonably designed to curtail gang activity." Id. Finally, regarding procedural due process, the Court stated that "[o]nce the statutory criteria are satisfied, the juvenile court is without discretion; it must transfer the minor. All 15-year-olds who fall within the purview of the `gang-transfer' provision are to be prosecuted under the criminal laws. We conclude, therefore, that Kent is not dispositive." Id.,
712. The Court therefore held that "the `gang-transfer' provision does not offend procedural due process." Id.
In Vega v. Bell, supra, 419 N.Y.S.2d 457, the New York Court of Appeals considered a change to its juvenile law which classified "juveniles between the ages of 13 and 15 who are charged with certain enumerated, serious crimes of violence" as "juvenile offenders." These juveniles are "prosecuted within the adult criminal justice system." Id. The Court found that "a juvenile offender may indeed be indicted by a Grand Jury without first being afforded a removal hearing before a local criminal court." Id., 458.
The Court also distinguished Kent v. United States, supra,383 U.S. 541: "[a]ll youngsters over a certain age who are accused of certain criminal activities are now automatically CT Page 4405-CCC prosecuted within the adult criminal system unless there exist certain special circumstances warranting more lenient treatment and transfer to the Family Court. Hence there exists no opportunity for that which the Supreme Court found to be abhorrent in Kent: namely, the possibility that some juveniles would be arbitrarily transferred to the adult criminal system, thereby subjecting them to significantly harsher potential penalties than could be imposed upon the majority of juveniles who engaged in similar antisocial behavior. Under the New York plan, in contradistinction, all juveniles accused of certain designated crimes are subject to the adult criminal system, except in those unusual cases in which treatment as a juvenile is deemed appropriate." Vega v. Bell, supra, 419 N.Y.S.2d 459.
In State v. Berard, supra, 401 A.2d 449 n. 1, the Supreme Court of Rhode Island considered a constitutional challenge to § 14-1-7.1 which provides that "[a] child sixteen (16) years of age or older who has been found delinquent for having committed two (2) offenses after the age of sixteen (16) which would render said child subject to an indictment if he were an adult, shall be prosecuted for all subsequent felony crimes by a court which would have jurisdiction of such offense if committed by an adult." The Court considered the historical treatment of juveniles, as well as federal and state cases which considered similar challenges. The Court concluded "[w]e believe that § 14-1-7.1 . . . is a reasonable and rational classification and that it violates neither the due process clause nor the equal protection clause of the Fourteenth Amendment to the Constitution of the United States nor any provision of the Constitution of the State of Rhode Island." Id., 453.
Based on the foregoing, because the majority of sister state decisions have found juvenile transfer statutes to be constitutional, this factor favors the conclusion that P.A,. 95-225, § 13(a), is constitutional.
(e) Historical Approach
In 1921 Connecticut established its juvenile system. However, prior to that time, children aged fourteen and older who committed felonies were treated as adults. Therefore, in 1818, when Connecticut adopted its constitution, children such as the defendant were deemed responsible, as adults, for their acts.Gentile v. Altermatt, 169 Conn. 267, 284, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041 (1976) (interpreting due process CT Page 4405-DDD clause under Art. 1 § 10). Although Gentile v. Altermatt,id., interprets the civil due process clause, the due process clause found in Art. 1 § 8 (criminal due process) has been used in the civil context interchangeably. Connecticut EducationAssn. v. Tirozzi, 210 Conn. 286, 293 n. 8, 554 A.2d 1065 (1989).
While Art. I, § 8 and Art. I, § 10 apply in two different contexts, the protections offered by their relative due process clauses both extend to those rights in place before 1818. Therefore, since the juvenile status of the defendant was not in existence at the time of the drafting of Connecticut's original constitution, juvenile status cannot be afforded protection as a right under the state's present constitution.
Based on the foregoing, the historical approach favors the conclusion that P.A. 95-225, § 13(a), is constitutional.
(f) Economic/Sociological Considerations
In enacting P.A. 95-225, § 13(a), the legislature was clearly concerned with ensuring public safety, while at the same time implementing a juvenile system. The legislature's concern is supported by the evidence presented by the court, Devlin, J., inState v. Jose C., supra, 16 CONN. L. RPTR. 419, 1996 WL 165549, demonstrating the increasing number of violent crimes perpetrated by juveniles. For example, the Court stated that "statistics from the National Council on Crime and Delinquency in San Francisco show that in 1987 the number of violent crimes by teenagers per 100,000 arrests was 600. By 1993, the last complete survey, the figure was 900. According to the Federal Bureau of Investigation statistics on crime demographics, these numbers could continue to increase since there are currently forty million children in the United States under the age of ten." Id., p. 11.
Based on the foregoing, this factor supports the conclusion that P.A. 95-225, § 13(a), is constitutional.
(g) Geisler Analysis Conclusion
The factors enumerated in State v. Geisler, 222 Conn. 684-85, favor the conclusion that P.A. 95-225, § 13(a), is constitutional. This conclusion is supported by "the established principle that those who challenge the constitutionality of a state statute bear the heavy burden of demonstrating beyond a reasonable doubt that the presumption of its validity has been CT Page 4405-EEE overcome." Benjamin v. Bailey, 234 Conn. 455, 477 (1995). In the present case, it is clear that the defendant did not meet this burden.
(2) Separation of Powers[3]
In his memorandum in support of his motions to dismiss, the defendant contends that P.A. 95-225, § 13(a), "impermissibly cedes to the prosecutors control of the docket," violating the separation of powers doctrine.[4] (Memorandum in Support of Defendant's Motion to Dismiss I and Motion to Dismiss II. p. 19.) The defendant specifically argues that "[t]he prosecutor's unbridled discretion to charge, and his unbridled discretion to determine whether a juvenile will be returned to the juvenile court's control vests in the prosecuting authority control over the court's docket." Id., 20. In opposition, the State argues that the prosecutor's ability to request a hearing to transfer the defendant back to Juvenile Court does not "usurp judicial control over the time and manner of scheduling, implicate subject matter that lies exclusively within judicial control, or even significantly interfere with the orderly functioning of the judicial role" and, therefore, does not violate the separation of powers doctrine. (State's Opposition to the Defendant's Motions to Dismiss I and II. p. 22.)
"In the establishment of three distinct departments of government the Constitution, by necessary implication, prescribes those limitations and imposes those duties which are essential to the independence of each and to the performance by each of the powers of which it is made the depository." (Internal quotation marks omitted.) Pellegrino v. O'Neill, 193 Conn. 670, 675,480 A.2d 476 (1984). "Just as the exercise of judicial power by the legislature is constitutionally prohibited, so is the legislative power forbidden to the judiciary." Id., 679. Therefore, "[a] statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . ." (Citation omitted.) State v. Ross,230 Conn. 183, 269, 646 A.2d 1318 (1994). "A defendant who challenges a statute as a violation of the constitutional doctrine of separation of powers bears the heavy burden of establishing the statute's invalidity beyond a reasonable doubt."State v. Morrison, 39 Conn. App. 632, 633, 665 A.2d 1372 (1995).
Regarding the lack of judicial review of the automatic CT Page 4405-FFF transfer in the present case, juvenile status is a legislative determination, not a constitutional right. State v. Anonymous,supra, 173 Conn. 417-18. Therefore, the automatic transfer provision in P.A. 95-225, § 13(a), does not violate the separation of powers doctrine. Regarding the prosecutor's ability to transfer the juvenile back to Superior Court, while the prosecutor files a motion to transfer the juvenile back to Juvenile Court, it is the court's decision whether to grant that motion. Therefore; the court ultimately makes the decision which affects the size and substance of its docket. Accordingly, the automatic transfer provision in P.A. 95-225, § 13(a), does not violate the separation of powers doctrine.
III. CONCLUSION
Based on the foregoing, the defendant's Motion to Dismiss I and Motion to Dismiss II are denied.
SPADA, J.