[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S AMENDED MOTION TO MODIFY CHILD SUPPORT, POST JUDGMENT (#132)
This is a case of first impression. The plaintiff, Lorrie Lynch (formerly Lorrie Cuillo), and the defendant, Daniel Cuillo, were married on January 1, 1977 in Wilson, New York. (Judgment, ¶ 1.) One child, Daniel, was born of the marriage on January 23, 1982. (Judgment, ¶ 4.) In a separation agreement dated May 5, 1989, the parties agreed that "[c]hild [s]upport payments shall continue until the child shall be emancipated, married or eighteen (18) years of age." (Separation Agreement, ¶ 4.) This agreement was subsequently submitted to the court, where it was found fair and equitable. (Judgment, ¶ 5.) Pursuant to the dissolution decree, the defendant was ordered to pay child support "until the child shall be emancipated, married or eighteen years of age." (Judgment, ¶ 5.)
On January 18, 2000, the plaintiff filed a motion to modify child CT Page 10159 support. In her motion, the plaintiff alleged that the child will reach the age of 18 on January 23, 2000, but that he will not graduate from high school until May 2001. Thus, she requested that the court enter orders continuing child support until the minor child reaches the age of 19 or graduates from high school, whichever occurs first. The plaintiff also filed a memorandum of law in support of her motion, which was dated February 23, 2000. In her memorandum of law, the plaintiff argues that the limitation provision set forth in General Statutes § 46b-84 (b), which limits application of the statute to cases in which a dissolution decree was entered on or after July 1, 1994, is a violation of the equal protection clause of the fourteenth amendment to the federal constitution as it applies to the child, Daniel.[1]
On February 25, 2000, the plaintiff and the child jointly filed an amended motion and supporting memorandum of law. The content of both pleadings were identical to those previously filed by the plaintiff, Lorrie Lynch. The defendant filed a memorandum of law in opposition to the amended motion to modify dated March 13, 2000, wherein he argues that General Statutes § 46b-84 (b) did not violate the equal protection clause of the federal constitution. Finally, the plaintiffs filed a response to the defendant's memorandum of law in opposition to their amended motion dated March 22, 2000.
A review of relevant Connecticut case law reveals no reported Supreme, Appellate or Superior Court decisions involving an equal protection challenge to General Statutes § 46b-84 (b). Nor has there been any similar equal protection challenges in Connecticut. Therefore, this case presents the court with an issue of first impression. Extensive out-of-state research was conducted in order to determine whether similar statutes were challenged on an equal protection basis and, if so, how those challenges were resolved. Unfortunately, no cases were found that were on point with the present case.[2]
 ISSUE
Whether General Statutes § 46b-84 (b) violates the equal protection clause of the fourteenth amendment of the federal constitution?
 DISCUSSION
It is a "well recognized jurisprudential principle that the party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . ." (Internal quotation marks omitted.) State v. Jason B., 248 Conn. 543,556, 729 A.2d 760 (1999). See also Barton v. Ducci ElectricalContractors, 248 Conn. 793, 812, 730 A.2d 1149 (1999) (stating "that the CT Page 10160 challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger" (Internal quotation marks omitted)). When dealing with a constitutional challenge to a statute, the court must "indulge in every presumption in favor of the statute's constitutionality. . . ." (Internal quotation marks omitted.) State v.Jason B., supra, 248 Conn. 556. See also Barton v. Ducci ElectricalContractors, supra, 248 Conn. 812 (stating that "every statute is presumed to be constitutional" (Internal quotation marks omitted)).
 I EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION
"[T]o implicate the equal protection clause under the . . . federal constitution . . . it is necessary that the state statute or statutory scheme in question, either on its face or in practice, treat persons standing in the same relation to it differently . . . Thus, the analytical predicate of consideration of an equal protection claim is a determination of who are the persons similarly situated. . . ." (Citation omitted; internal quotation marks omitted.) State v. Jason B., supra,248 Conn. 558-59. "The equal protection clause does not require absolute equality or precisely equal advantages between such similarly situated persons. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. . . ." (Citations omitted; internal quotation marks omitted.) Id., 559.
"When a statute is challenged on equal protection grounds, . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest." (Internal quotation marks omitted.)Barton v. Ducci Electrical Contractors, supra, 248 Conn. 813-14. "The second tier, intermediate scrutiny, uses an `exacting scrutiny' or `strict rationality' test. This test applies in cases involving such classifications as those based on gender and illegitimacy. Under the `exacting scrutiny' or `strict rationality' tests, classifications must serve important governmental objectives and `must be substantially related to achievement of those objectives.'" State v. Concepcion, Superior Court, judicial district of Hartford/New Britain at Hartford, CT Page 10161 Docket No. 159081 (June 17, 1996, Spada, J.) (17 Conn.L.Rptr. 512, 514), quoting Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451,50 L.Ed.2d 397
(1976). "If the statute does not touch upon either a fundamental right or a suspect class [or if intermediate scrutiny is not applicable], its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) Barton v. DucciElectrical Contractors, supra, 248 Conn. 813-14.
 A Classification Between Similarly Situated Persons
First, the court must determine if the challenged portion of General Statutes § 46b-84 (b) creates a classification between similarly situated persons. General Statutes § 46b-84 (b) provides: "If there is an unmarried child of the marriage who has attained the age of eighteen, is a full-time high school student and resides with a parent, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such time as such child completes the twelfth grade or attains the age of nineteen, whichever first occurs. The provisions of this subsection shall applyonly in cases where the decree of dissolution of marriage, legalseparation or annulment is entered on or after July 1, 1994." (Emphasis added.) This last sentence, which contains a prospective limitation, is the only part of the statute challenged by the plaintiffs. As such, the court will only examine the prospective limitation portion of General Statutes § 46b-84 (b) when determining if any classification is created by the statute.
The plaintiffs maintain that, for the purposes of the equal protection analysis in this case, the persons similarly situated to the child must be defined as legitimate children of currently divorced parents who were born between July 2, 1975 and July 1, 1994. Moreover, they argue that the statute discriminates between members of this class of person by giving some of them the right to be maintained by their parents past the age of eighteen but not others.
The defendant argues that this case does not fall under the quasi-suspect standard of review. Rather, he maintains that General Statutes § 46b-84 (b) is based upon the time the parties contracted and that the classification created by the statute is between parties who entered into valid agreements or contracts that were executed on or after July 1, 1994. Neither the plaintiffs nor the defendant have accurately described the classification created by the prospective limitation portion of General Statutes § 46b-84 (b). CT Page 10162
There is no indication in the legislative history for General Statutes § 46b-84 (b) that the legislature considered or intended creating any classifications by enacting the prospective limitation portion of the statute. In fact, most of the legislative history concerns an unrelated amendment for post-majority support while a child attends college. A reading of the prospective limitation portion of General Statutes §46b-84 (b) establishes that a classification was created based on the date an order was entered by the court. The classification created by the prospective limitation portion of the statute does not directly involve the child and others similarly situated, but rather involves the parties to a marital dissolution, annulment or legal separation and their parental obligations of support, nor does it necessarily entail agreements or contracts between the parties that are incorporated into court orders as there is no such requirement in the statute. As such, the classification created by the prospective limitation portion of General Statutes § 46b-84 (b) involves parties whose decrees of dissolution, annulment or legal separation were entered on or after July 1, 1994, and parties whose decrees were entered before July 1, 1994.
 B Applicable Standard of Review
Second, the court must determine what standard of review is applicable given the nature of the above-referenced classification. The plaintiffs maintain that the classification set forth in General Statutes § 46b-84
(b) is "very much" like an illegitimacy classification in that it is based solely on the marital status of the class-members' parents. According to this argument, such a classification is not based on anything within the individual's control and bears no relation to the individual's ability to participate in and contribute to society. Thus, the plaintiffs argue that, like the illegitimacy classification, the classification set forth in General Statutes § 46b-84 (b) should be categorized as "quasi-suspect." The defendant maintains, however, that the classification involved in this case is not "quasi-suspect" and that the United States Supreme Court has not expanded the intermediate scrutiny standard of review to classifications other than gender and illegitimacy. Moreover, he argues that the plaintiffs' reasoning is faulty in that it could be argued that almost any classification is "like" illegitimacy in that many classifications which are examined under the rational basis standard of review are beyond a person's control and have nothing to with the person's ability to contribute to and participate in society (i.e. wealth and age). Rather, the defendant argues that the rational basis standard of review is applicable. CT Page 10163
The plaintiffs do not claim that General Statutes § 46b-84 (b) impinges on a suspect class or a fundamental right, nor is there a basis for such a claim. Additionally, they have cited no authority which supports their argument for the expansion of the classifications that are subject to intermediate scrutiny beyond gender and illegitimacy. Moreover, the court was unable to find any authority for such a proposition after conducting its own research. Neither strict nor intermediate scrutiny applies in the present case; rather, that the rational basis test is the appropriate standard of review to be applied.
 II RATIONAL BASIS STANDARD OF REVIEW
"The court's function under the rational basis test is to decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decision maker, . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . (Citations omitted; internal quotation marks omitted.) Barton v. Ducci Electrical Contractors, supra,248 Conn. 814. "The test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. . . . Furthermore, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decision maker actually articulate at any time the purpose or rationale supporting its classification." (Citations omitted; internal quotation marks omitted.) Id., 818. See also State v. Jason B., supra, 248 Conn. 559 (stating that "[i]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature" (Internal quotation marks omitted)).
 A Legitimate State End
Applying the rational basis test to this case, the court must determine if there is a legitimate governmental purpose for the classification. The plaintiffs argue that the interest served by the classification is the preservation of divorce agreements entered into prior to the enactment of the 1994 amendment under the belief that maintenance of one's child was CT Page 10164 required by law only until the child's eighteenth birthday. The defendant counters by arguing that General Statutes § 46b-84 (b) respects the importance of contracts.
The legislature did not articulate any legitimate governmental purposes behind the prospective limitation of General Statutes § 46b-84 (b). As noted above, however, this does not prevent the court from interpreting the statute to find a legitimate government purpose for the limitation provision. The legitimate governmental purposes served by the prospective limitation in General Statutes § 46b-84 (b) are the finality of judgments and the preservation of the expectations that flow therefrom.[3]
If General Statutes § 46b-84 (b) was applied retroactively, then the floodgates would open and the courts would be consumed by requests for extended support. Such requests would be allowed regardless of how long ago the decree of divorce, legal separation or annulment was entered. Additionally, the government has an interest in enforcing private agreements or contracts that have been incorporated into decrees for dissolution, separation or annulment. This conserves judicial resources and encourages private resolution of family issues. Likewise, the government has an interest in preserving and enforcing orders that were entered by the courts in dissolution, separation and annulment proceedings. This would conserve judicial resources because the courts would not be forced to re-work decrees in order to account for extended support and its affect on the other financial orders in the decree. Otherwise, the public would have no confidence in the judiciary to resolve disputes in a conclusive manner. Finally, prospective application of General Statutes § 46b-84 (b) preserves the delicate balance of financial and property awards in private agreements and court orders because child support awards are often intertwined with or connected to property distributions and/or spousal support awards. See Dietter v.Dietter, 54 Conn. App. 481, 497, 737 A.2d 926, cert. denied, 252 Conn. 906,743 A.2d 617 (1999) ("The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted)).
The legitimate governmental purposes served by the prospective limitation in General Statutes § 46b-84 (b) are the finality of judgments and the preservation of the expectations that flow therefrom.
 B Rational Relationship CT Page 10165
The court must next determine whether there is a rational relationship between the classification created by the prospective limitation in General Statutes § 46b-84 (b) and the legitimate governmental purposes served by this classification. The defendant argues that the plaintiffs have not put forth any evidence as to why or how General Statutes § 46b-84 (b) is not rationally related to a legitimate governmental purpose. According to the defendant, the plaintiff assumed the risk of a change in the law, which was part of the consideration for the separation agreement. Finally, he maintains that General Statutes § 46b-84 (b) is a valid attempt not to infringe upon the contract clause of the federal constitution.
Since October 1, 1977, parties to a dissolution of marriage proceeding have had the power to sign agreements for post-majority support that would be incorporated into divorce judgments or orders and enforced by the courts. See Hirtle v. Hirtle, 217 Conn. 394, 399, 586 A.2d 578
(1991). See also Snider v. Snider, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 246893 (July 22, 1996, Doherty, J.) (stating that our "Supreme Court has consistently held that support obligations cease after the child has attained the age of majority unless there is some binding agreement between the parties to the contrary"). According to the legislative history for General Statutes § 46b-84
(b), the legislature recognized this power to agree to post-majority support but acknowledged that agreements for such support were routinely not being made. See 37 S. Proc., Pt. 6, 1994 Sess., p. 1805, remarks of Senator Upson ("And the reason we had some nay votes in Judiciary, because they felt that lawyers should actually . . . negotiate this in advance, and quite frankly, that's not the case when a divorce, certain[ly] a pro se divorce."); 37 H.R. Proc., Pt. 9, 1994 Sess., p. 3066-67, remarks of Representative Wollenberg ("In a domestic matter where there is an agreement, I think most lawyers who represent someone with a child in this capacity should not go away from the bargaining table unless that child were taken care of within the agreement. Evidently, I am hearing that that does not happen these days. That they are not working it into the agreement and therefore, the need is felt and we must do this by statute."). As a result, the legislature expressed the desire to guarantee support for children through high school or until age nineteen, whichever comes first, in all future cases because of the importance of obtaining a high school diploma and the failure of parties to reach agreements providing for such support. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1994 Sess., p. 1312, remarks of Sally Oldham (Chairman for the Connecticut Bar Association, post-majority child support committee) ("It's increasingly common that children do not graduate from high school until well after 18th or even 19th birthday. In addition, an individual who lacks a high school diploma in this country today, is both socially stigmatized and vocationally handicapped. We CT Page 10166 believe every child should be entitled to support until this milestone is achieved."); 37 S. Proc., supra, p. 1806, remarks of Senator Upson ("So it is very specific and there is no question as to the intent and it shall not take effect until July 1, 1994, and for those divorces and dissolutions which go into effect after that date. It's not a question.").
The only way the legislature could guarantee such support in future cases without affecting the finality of judgments that were already entered and the expectations that had invariably arisen from these judgments was to ensure that General Statutes § 46b-84 (b) would only be applied on a prospective basis. Clearly this exhibits a rational relationship between the classification and the governmental purposes behind the statute. Based on the foregoing, there is a rational relationship between the classification created by the prospective limitation in General Statutes § 46b-84 (b) and the legitimate governmental purposes served by this classification.
 CONCLUSION
General Statutes § 46b-84 (b) does not violate the equal protection clause of the fourteenth amendment of the federal constitution.
John R. Caruso, J.