## STATE OF CONNECTICUT *v.* ANONYMOUS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 9—decision released August 23, 1977

*James A. Wade,* with whom was *Holly B. Fitz-simmons,* for the appellant (defendant).

*Harry S. Gaucher, Jr.,* state's attorney, for the appellee (state).

BOGDANSKI, J. On March 26, 1976, Dawn Peterson died as a result of injuries received when struck on the head by a rock. Her body was discovered in an abandoned cellar in her hometown of North Windham. The defendant was subsequently taken into custody and referred to the Juvenile Court. A petition was then filed alleging the defendant to be delinquent on the ground that he caused the death of Dawn Peterson. On the date of Dawn Peterson's

death, the defendant was fifteen years of age. The defendant was released on bail and the case continued for a hearing pursuant to § 17-60a of the General Statutes for a determination of whether his case should be transferred to the jurisdiction of the Superior Court.

On May 21, 1976, the defendant became sixteen years of age. After the hearing pursuant to § 17-60a, the Juvenile Court ordered the case transferred to the Superior Court for disposition. On July 7, 1976, the defendant appeared before the Superior Court, was advised of his rights, and released in the custody of his father. The court (*Dannehy, J.*) then ordered the file sealed and the case captioned *"State* v. *Anonymous"* until a grand jury had convened and considered the evidence.

On September 2, 1976, the grand jury returned a true bill of indictment charging the defendant with the crime of murder in violation of § 53a-54a of the General Statutes. On motion of the state, the court (*Rubinow, J.*) ordered the file unsealed, but issued a stay of its decree to permit the defendant to file an appeal to this court.

Upon those facts, the trial court concluded that: (1) the defendant has no statutory right to have the file remain sealed; (2) the order of July 7, 1976, sealing the file, was based on the premise that the defendant was entitled to the protection of confidentiality until such time as an indictment was returned against him; and (3) the defendant is no longer entitled to the protection of confidentiality.

The defendant raises the following claims: (a) a juvenile charged with a criminal offense is entitled to protection from stigmatizing publicity; (b) the policy of this state is to rehabilitate, not punish,

juvenile offenders; (c) the defendant is entitled to the same confidentiality in the Superior Court that he was accorded in the Juvenile Court; and (d) the failure to reverse the Superior Court order unsealing the file will violate the presumption of innocence and right to privacy guaranteed to the defendant by the United States and Connecticut constitutions.

The basic issue raised by those claims is whether the anonymity associated with juvenile offender status survives a transfer of jurisdiction from Juvenile Court to Superior Court pursuant to § 17-60a of the General Statutes.

At the outset, it should be noted that no statute or Practice Book rule permits or requires the Superior Court to seal or keep sealed the file of an individual transferred to it pursuant to § 17-60a of the General Statutes.[1]

In 1971, the legislature enacted Public Act No. 170, which became § 17-60a of the General Statutes.[2]

[1] The defendant does not challenge the constitutionality of the statute or the proceedings which gave rise to his transfer to the Superior Court.

[2] "[General Statutes] Sec. 17-60a. TRANSFER TO SUPERIOR COURT OF CHILD REFERRED FOR COMMISSION OF MURDER. The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child referred to it for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years. No such transfer shall be valid unless prior thereto the court has caused a complete investigation to be made as provided in section 17-66 and has found, after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child."

That statute provides for the Juvenile Court, after investigation, hearing and certain findings, to transfer any child charged with murder to the jurisdiction of the Superior Court, provided any such murder was committed after the child attained fourteen years of age. That statute, as initially passed,[3] was silent as to whether such a child was to be treated in a manner different from that of any other criminal offender in Superior Court.

Section 17-60a was applicable to the defendant who was fifteen years of age on March 26, 1976. The transfer of the defendant was not based upon the fact that he turned sixteen on May 21, 1976, but rather was based solely upon the provisions and requirements of § 17-60a. See, generally, *Kent* v. *United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84.

Any privacy accorded to a juvenile because of his age with respect to proceedings relative to a criminal offense results from statutory authority, rather than from any inherent or constitutional right. Such statutory right to privacy reflects a legislative policy to the effect that juveniles should be treated in a manner different from that of other criminal offenders. Because the right to anonymity emanates from the legislature and does not involve any funda-

---

[3] The statute has since been amended effective October 1, 1976. The amendment provides that: "Upon the effectuation of the transfer, the superior court shall have exclusive jurisdiction of such child, and such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen." 1976 Public Acts, No. 76-194, § 4. The statute, as amended, was not applicable to the defendant on the date of transfer.

mental right, that right can be withdrawn or limited to certain classes of juvenile offenders by the legislature provided the classifications are founded upon a rational basis. *Horton* v. *Meskill,* 172 Conn. 615, 376 A.2d 359. "In exercising [the state's] police power the legislature has a broad discretion, both in determining what the public welfare requires, and in fashioning legislation to meet that need." *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 304, 307, 355 A.2d 247.

Murder is the most serious of criminal charges. The enactment of § 17-60a of the General Statutes manifests the legislature's recognition of the special problems which arise in the processing and disposition of juveniles charged with murder. Because of such problems, the legislature in enacting § 17-60a carved out an exception to the Juvenile Court statutory scheme with respect to juveniles charged with murder. That statute, when viewed in the context of the crime charged, the required investigation, hearing and court findings, clearly demonstrates that it was rationally based.

Once transferred from the Juvenile Court to the Superior Court, the Superior Court has exclusive jurisdiction, with the offender subject to trial and sentencing just as any other accused. "A trial is a public event. What transpires in the court room is public property. . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig* v. *Harney,* 331 U.S. 367, 374, 67 S. Ct. 1249, 91 L. Ed. 1546; *State* v. *Marshall,* 166 Conn. 593, 598, 353 A.2d 756.

The defendant's claim that the legislature intended to permit juveniles, once having been granted juvenile status in the Juvenile Court, to retain that status even though transferred to the Superior Court, lacks merit.

In 1971, the legislature enacted another statutory scheme in 1971 Public Acts, No. 71-72, to accord "youthful offenders" in Superior Court rights similar to those accorded juvenile offenders in the Juvenile Court system. See §§ 54-1a, 54-76b to 54-76o of the General Statutes. Those rights, however, were limited to "a youth who has committed a crime or crimes which are not class A felonies, [and] who has not previously been convicted of a felony or been previously adjudged a youthful offender." Thus, the legislature, in the same year and session in which it enacted § 17-60a clearly expressed its intent to withhold age-related benefits from juveniles, solely on the basis of the severity and frequency of past criminal behavior.

This defendant had the benefit of juvenile status so long as he was in the exclusive jurisdiction of the Juvenile Court. Once he was removed from that exclusive jurisdiction by a transfer pursuant to the provisions of § 17-60a, however, he lost that juvenile status and all the benefits associated therewith. See *Kent* v. *United States,* 383 U.S. 541, 556–57, 86 S. Ct. 1045, 16 L. Ed. 2d 84. In the absence of any statute, rule of court, or any other authority whatever, we cannot accept the proposition urged upon us by the defendant that a right of anonymity once attained carries over to the Superior Court.

We conclude that the General Assembly by enacting § 17-60a, as originally passed, intended by that

statute to remove the juvenile status of a juvenile upon his transfer from the jurisdiction of the Juvenile Court.

There is no error.

In this opinion the other judges concurred.