## STATE OF CONNECTICUT *v.* JAIME MATOS
## (15433)

Callahan, C. J., and Borden, Norcott, McDonald and Peters, Js.

Argued February 19—officially released May 6, 1997

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Edward R. Narus*, assistant state's attorney, for the appellee (state).

*Opinion*

CALLAHAN, C. J. The primary issue in this appeal is whether the defendant, Jaime Matos, was deprived of his rights to due process and equal protection of the law when he was prevented by General Statutes (Rev. to 1991) § 54-76b[1] from applying for treatment as a youthful offender because he was charged with, although not convicted of, the class A felony of murder. Additionally, we are asked to determine whether the

---

[1] General Statutes (Rev. to 1991) § 54-76b provides: "For the purpose of sections 54-76b to 54-76n, inclusive, 'youth' means a minor who has reached the age of sixteen years but has not reached the age of eighteen years; and 'youthful offender' means a youth who is charged with the commission of a crime which is not a violation of section 53a-70a or a class A felony, who has not previously been convicted of a felony or been previously adjudged a youthful offender, or been afforded a pretrial program for accelerated rehabilitation under section 54-56e, and who is adjudged a youthful offender pursuant to the provisions of said sections. The interstate compact on juveniles, except the provisions of article four thereof, shall apply to youthful offenders to the same extent as to minors below sixteen years of age." Unless otherwise indicated, all references to § 54-76b are to that statute as revised to 1991.

trial court abused its discretion by excluding evidence of the victim's gang connections. We conclude that the defendant's due process and equal protection rights were not violated by § 54-76b and that the trial court did not abuse its discretion in refusing to admit the proffered evidence. We therefore affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 10, 1990, the defendant, who was seventeen years of age, together with two friends, Angel Madeira and Julio Sanchez, attended a festival held at Colt Park in Hartford. The defendant carried a semiautomatic pistol with him to the festival. Also attending the festival were Roberto Sanchez and several of his friends. Apparently, there was an unsettled dispute between these two groups arising from a previous altercation. At 3:21 p.m. during the festival, which was attended by approximately 15,000 people, the two groups met. Roberto Sanchez spoke to the defendant's friend, Madeira, saying, "I didn't get you last time. I'm going to get you now."[2] Roberto Sanchez then struck Madeira with his fist, and the two became involved in a fist fight, during which the defendant pulled his gun from his waistband and fired several shots. Roberto Sanchez was struck four times by the defendant's bullets and was killed. Norberto Rivera, an innocent bystander, was hit in the shoulder and wounded by a stray bullet. The defendant was arrested later that night. Additional facts will be noted where necessary.

The defendant was charged in an amended information with murder in violation of General Statutes § 53a-54a,[3] first degree assault in violation of General Statutes

[2] The evidence is unclear whether Roberto Sanchez used the word "get" or the word "kill" when he addressed Madeira.

[3] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this

§ 53a-59,[4] and criminal use of a firearm in violation of General Statutes § 53a-216.[5] Thereafter, the defendant filed a youthful offender eligibility application, which was denied by the trial court. The defendant's subsequent motions requesting the court to reconsider his youthful offender application also were denied. After a hearing pursuant to General Statutes § 54-46a,[6] the

subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . .

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a . . . ."

[4] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . .

"(b) Assault in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[5] General Statutes § 53a-216 provides: "(a) A person is guilty of criminal use of a firearm or electronic defense weapon when he commits any class A, B or C or unclassified felony as defined in section 53a-25 and in the commission of such felony he uses or threatens the use of a pistol, revolver, machine gun, shotgun, rifle or other firearm or electronic defense weapon. No person shall be convicted of criminal use of a firearm or electronic defense weapon and the underlying felony upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Criminal use of a firearm or electronic defense weapon is a class D felony for which five years of the sentence imposed may not be suspended or reduced by the court."

[6] General Statutes § 54-46a provides: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put

court found probable cause for the murder charge. A jury later acquitted the defendant of murder, but convicted him of the lesser included offense of first degree manslaughter in violation of General Statutes § 53a-55 (a) (1).[7] The jury also found the defendant guilty of first degree assault and criminal use of a firearm. The trial court dismissed the criminal use of a firearm count[8] and sentenced the defendant to a term of fifteen years on the manslaughter count and to a term of five years on

to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

[7] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . .

"(b) Manslaughter in the first degree is a class B felony."

[8] See footnote 5.

the first degree assault count, to run consecutively, for a total effective sentence of twenty years. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The defendant presents the following issues on appeal: (1) whether § 54-76b violates his rights to due process and equal protection under the state and federal constitutions;[9] and (2) whether the trial court abused its discretion by excluding evidence concerning the gang with which the victim was supposedly affiliated and its reputation for violence. We affirm the judgment of the trial court.

I

The defendant challenges § 54-76b on both substantive due process and equal protection grounds. It is well settled that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 590, 590 A.2d 447 (1991); *Zapata* v. *Burns,* 207 Conn. 496, 508, 542 A.2d 700 (1988). While courts may declare a statute to be unconstitutional, the power to do so should "be exercised with caution, and in no doubtful case." *State* v. *Brennan's Liquors,* 25 Conn. 278, 288 (1856). Every presumption is to be given in favor of the constitutionality of a statute. *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *Bottone* v. *Westport,* 209 Conn. 652, 657, 553 A.2d 576 (1989).

A

The defendant first claims that § 54-76b violates his right to due process as guaranteed to him by the federal

_____

[9] Because the defendant has not provided a separate and distinct analysis of his due process and equal protection claims under the state constitution, we address only his federal constitutional claims. See *State* v. *Hinton,* 227

constitution. "The fourteenth amendment to the United States constitution provides that the 'State [shall not] deprive any person of life, liberty, or property, without due process of law . . . .' In order to prevail on his due process claim, the [defendant] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law. See *Double I Limited Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 76, 588 A.2d 624 (1991); *Connecticut Education Assn.* v. *Tirozzi*, 210 Conn. 286, 293, 554 A.2d 1065 (1989) . . . ." *Tedesco* v. *Stamford*, 222 Conn. 233, 241–42, 610 A.2d 574 (1992).

"Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States. *Meachum* v. *Fano*, 427 U.S. 215, 223–227 [96 S. Ct. 2532, 49 L. Ed. 2d 451] (1976)." *Hewitt* v. *Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). The defendant does not claim that he has been deprived of a fundamental right by the youthful offender statute. He claims, rather, that the youthful offender statute itself has created a liberty interest and that he has been denied that liberty interest without due process of law. "[O]nce a state provides its citizens with certain statutory rights beyond those secured by the constitution itself, the constitution forbids the state from depriving individuals of those statutory rights without due process of law." *State* v. *Garcia*, 233 Conn. 44, 77, 658 A.2d 947 (1995), on appeal after remand, 235 Conn. 671, 669 A.2d 573 (1996). "The guarantee of substantive due process requires that a law be reasonable, rather than arbitrary or capricious, and that its operation has a real and substantial relation to the object to be obtained. *All Brand Importers, Inc.*

Conn. 301, 322 n.23, 630 A.2d 593 (1993); *State* v. *Gonzalez*, 206 Conn. 391, 393–94 n.2, 538 A.2d 210 (1988).

v. *Dept. of Liquor Control*, [213 Conn. 184, 205, 567 A.2d 1156 (1989)]." *Langan* v. *Weeks*, 37 Conn. App. 105, 118, 655 A.2d 771 (1995). In the absence of a claim of deprivation of a fundamental right, we have scrutinized such questions under a rational basis test. See generally *Campbell* v. *Board of Education*, 193 Conn. 93, 105, 475 A.2d 289 (1984); *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 314–15, 417 A.2d 343 (1979). The party claiming a constitutional violation "bears the heavy burden of proving that the challenged policy has no reasonable relationship to *any* legitimate state purpose; *Caldor's, Inc.* v. *Bedding Barn, Inc.*, supra, 314–15 . . . ." (Citation omitted; emphasis added.) *Campbell* v. *Board of Education*, supra, 105.

A brief examination of the benefits of youthful offender status and the statutory eligibility requirements for that status is in order before we consider the defendant's due process claims. The youthful offender statutes confer certain benefits on those youths eligible to be adjudged youthful offenders. For instance, all proceedings, except the motion for investigation of eligibility, are private. General Statutes § 54-76h.[10] If confined, a youth is segregated from other defendants over the age of eighteen years before and during trial and before sentencing. General Statutes § 54-76h. A youthful offender is also eligible to receive a more lenient sentence; compare General Statutes § 54-76j,[11] with, e.g.,

[10] General Statutes § 54-76h provides: "All of the proceedings except proceedings on the motion under section 54-76c had under the provisions of sections 54-76b to 54-76n, inclusive, shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes. If such defendant is committed while such examination and investigation is pending, before trial, during trial or after judgment and before sentence, those persons in charge of the place of detention shall segregate such defendant, to the extent of their facilities, from defendants over the age of eighteen years charged with crime."

[11] General Statutes § 54-76j provides in relevant part: "(a) The court, upon the adjudication of any person as a youthful offender, may (1) commit the

General Statutes § 53a-35a;[12] is not disqualified from later holding public office, and does not forfeit any right or privilege to receive a license granted by a public authority. General Statutes § 54-76k.[13] Moreover, a youthful offender is not considered a criminal, and a determination that a defendant is a youthful offender is not deemed a conviction. General Statutes § 54-76k. A youthful offender's records are kept confidential; General Statutes § 54-76l;[14] and are automatically erased

defendant, (2) impose a fine not exceeding one thousand dollars, (3) impose a sentence of conditional discharge or a sentence of unconditional discharge, (4) impose a sentence of community service, (5) impose a sentence to a term of imprisonment not greater than that authorized for the crime committed by the defendant, (6) impose sentence and suspend the execution of the sentence, entirely or after a period set by the court, or (7) order treatment pursuant to section 17a-656. . . ." Section 54-76j was amended after the time that the defendant applied for and was denied youthful offender status.

[12] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (4) for the class B felony of manslaughter in the first degree with a firearm under section 53a-55a, *a term not less than five years* nor more than forty years . . . ." Subdivision (4) was added to § 53a-35a in 1994, after the defendant's conviction. See Public Acts, Spec. Sess., July, 1994, No. 94-2, § 2.

[13] General Statutes § 54-76k provides: "No determination made under the provisions of sections 54-76b to 54-76n, inclusive, shall operate as a disqualification of any youth subsequently to hold public office or public employment, or as a forfeiture of any right or privilege to receive any license granted by public authority and no youth shall be denominated a criminal by reason of such determination, nor shall such determination be deemed a conviction."

[14] General Statutes § 54-76l provides: "(a) The records of any youth adjudged a youthful offender, including fingerprints, photographs and physical descriptions, shall be confidential and shall not be open to public inspection or be disclosed except as provided in this section, but such fingerprints, photographs and physical descriptions submitted to the State Police Bureau of Identification of the Division of State Police within the Department of Public Safety at the time of the arrest of a person subsequently adjudged a youthful offender shall be retained as confidential matter in the files of such bureau, and be opened to inspection only as hereinafter provided. Other data ordinarily received by such bureau, with regard to persons arrested for a crime, shall be forwarded to the bureau to be filed, in addition to the fingerprints, photographs and physical descriptions as mentioned above, and be retained in the division as confidential information, open to inspection only as hereinafter provided.

"(b) The records of any youth adjudged a youthful offender, or any part

"when such person attains twenty-one years of age, provided such person has not subsequent to being adjudicated a youthful offender been convicted of a felony . . . prior to [having] attained such age." General Statutes § 54-76o.[15]

thereof, may be disclosed to and between individuals and agencies, and employees of such agencies, providing services directly to the youth including law enforcement officials, state and federal prosecutorial officials, school officials in accordance with section 10-233h, court officials, the Division of Criminal Justice, the Office of Adult Probation, the Office of the Bail Commission, the Board of Parole and an advocate appointed pursuant to section 54-221 for a victim of a crime committed by the youth. Such records shall be available to the attorney representing the child, his parents or guardian. Such records disclosed pursuant to this subsection shall not be further disclosed.

"(c) The records of any youth adjudged a youthful offender, or any part thereof, may be disclosed upon order of the court to any person who has a legitimate interest in the information and is identified in such order. Records or information disclosed pursuant to this subsection shall not be further disclosed.

"(d) The records of any youth adjudged a youthful offender, or any part thereof, shall be available to the victim of the crime committed by such youth to the same extent as the record of the case of a defendant in a criminal proceeding in the regular criminal docket of the Superior Court is available to a victim of the crime committed by such defendant. The court shall designate an official from whom such victim may request such information. Information disclosed pursuant to this subsection shall not be further disclosed.

"(e) Any reports and files held by the Office of Adult Probation regarding any youth adjudged a youthful offender may be disclosed to the Office of the Bail Commission for the purpose of performing the duties contained in section 54-63b." Section 54-76l was amended after the time the defendant applied for and was denied youthful offender status.

[15] General Statutes § 54-76o provides: "Whenever any person has been adjudicated a youthful offender and has subsequently been discharged from the supervision of the court or from the care of any institution or agency to whom he has been committed by the court, all police and court records pertaining to such youthful offender shall be automatically erased when such person attains twenty-one years of age, provided such person has not subsequent to being adjudged a youthful offender been convicted of a felony, as defined in section 53a-25, prior to attaining such age. Youthful offender status shall not be deemed conviction of a crime for the purposes of this section. Upon the entry of such an erasure order, all references including arrest, complaint, referrals, petitions, reports and orders, shall be removed from all agency, official and institutional files. The persons in charge of such records shall not disclose to any person, except the subject of the

Certain categories of defendants, however, are statutorily ineligible for treatment as youthful offenders. These groups can be characterized as comprising three general classifications: (1) those defendants who have already had the benefit of juvenile or youthful offender treatment or who have been afforded accelerated rehabilitation;[16] (2) those defendants previously convicted of a felony; and (3) those defendants who have been charged with certain serious crimes.[17]

The defendant makes two substantive due process claims: (1) that the legislature's decision to base eligibility for youthful offender status on the seriousness of the crimes charged violates his right to due process of law; and (2) that the legislature's decision to preclude a defendant from seeking the postverdict benefits of the youthful offender statutes if he or she is charged with, but not convicted of, one of the disqualifying offenses also violates the defendant's right to due process of law. We disagree with both arguments.

record, upon submission of satisfactory proof of the subject's identity in accordance with guidelines prescribed by the Chief Court Administrator, information pertaining to the record so erased. No youth who has been the subject of such an erasure order shall be deemed to have been arrested ab initio, within the meaning of the general statutes, with respect to proceedings so erased. Copies of the erasure order shall be sent to all persons, agencies, officials or institutions known to have information pertaining to the proceedings affecting such youth." Section 54-76o was amended after the time the defendant applied for and was denied youthful offender status.

[16] General Statutes (Rev. to 1997) § 54-76b excludes from eligibility those youths who have "been previously adjudged a serious juvenile offender or serious juvenile repeat offender, as defined in section 46b-120, or a youthful offender, or been afforded a pretrial program for accelerated rehabilitation under section 54-56e . . . ."

[17] General Statutes (Rev. to 1997) § 54-76b excludes from eligibility those youths charged with a class A felony or a violation of subdivision (2) of General Statutes § 53-21 (injury or risk of injury to, or impairing morals of, children), General Statutes § 53a-70 (sexual assault in first degree), General Statutes § 53a-70a (aggravated sexual assault in first degree), General Statutes § 53a-70b (sexual assault in spousal or cohabiting relationship), General Statutes § 53a-71 (sexual assault in second degree), General Statutes § 53a-72a (sexual assault in third degree), or General Statutes § 53a-72b (sexual assault in third degree with firearm).

With respect to the defendant's first claim, we believe that the legislature's decision to grant preverdict benefits and, therefore, to determine youthful offender status before trial, is rational. The preverdict benefits are real and substantial, and the early determination of eligibility is necessary to confer those benefits. We also conclude that it was rational for the legislature to exclude from youthful offender eligibility those defendants charged with murder.

The rationality of the legislature's choice is supported by our decision in *State* v. *Anonymous*, 173 Conn. 414, 378 A.2d 528 (1977), in which we concluded that it was rational for the legislature to carve out an exception to the juvenile court statutory scheme with respect to *juveniles* charged with murder. The defendant in *Anonymous* was charged with intentionally causing a death. At the time of the incident, the defendant was fifteen years of age. He was therefore referred to the juvenile court. After a hearing pursuant to General Statutes (Rev. to 1977) § 17-60a,[18] however, the defendant's case was

---

[18] General Statutes (Rev. to 1977) § 17-60a provides: "The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child referred to it for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years. No such transfer shall be valid unless prior thereto the court has caused a complete investigation to be made as provided in section 17-66 and has found, after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child. Upon the effectuation of the transfer, the superior court shall have exclusive jurisdiction of such child and such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen." Currently, the statute concerning the transfer of juveniles to the regular criminal docket is General Statutes § 46b-127.

transferred to the Superior Court for disposition, and his file was sealed by that court. Subsequently, "the grand jury returned a true bill of indictment charging the defendant with the crime of murder in violation of § 53a-54a of the General Statutes. On motion of the state, the court . . . ordered the file unsealed, but issued a stay of its decree to permit the defendant to file an appeal to this court." Id., 415. On appeal, we rejected the defendant's claim of a violation of his right to privacy as guaranteed by the United States and Connecticut constitutions because his file was to be unsealed upon his transfer from the juvenile court.

We stated: "Any privacy accorded to a juvenile because of his age with respect to proceedings relative to a criminal offense results from statutory authority, rather than from any inherent or constitutional right. Such statutory right to privacy reflects a legislative policy to the effect that juveniles should be treated in a manner different from that of other criminal offenders. Because the right to anonymity emanates from the legislature and does not involve any fundamental right, that right can be withdrawn or limited to certain classes of juvenile offenders by the legislature provided the classifications are founded upon a rational basis. *Horton* v. *Meskill*, 172 Conn. 615, 376 A.2d 359 [1977]. 'In exercising [the state's] police power the legislature has a broad discretion, both in determining what the public welfare requires, and in fashioning legislation to meet that need.' *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 167 Conn. 304, 307, 355 A.2d 247 [1974].

"Murder is the most serious of criminal charges. The enactment of § 17-60a of the General Statutes manifests the legislature's recognition of the special problems which arise in the processing and disposition of juveniles charged with murder. Because of such problems, the legislature in enacting § 17-60a carved out an exception to the juvenile court statutory scheme with respect

to juveniles charged with murder. That statute, when viewed in the context of the crime charged, the required investigation, hearing and court findings, clearly demonstrates that it was rationally based." *State* v. *Anonymous*, supra, 173 Conn. 417–18.

We reach a similar conclusion in this case. The youthful offender statutes were enacted as Public Acts 1971, No. 72. From the debate on the Senate floor prior to passage, it is clear that the youthful offender statutes were intended to protect and possibly rehabilitate those youths who had made a mistake because of their immaturity. "I believe this is a giant step forward in the way 16 and 17 year olds are treated by the State of Connecticut. This is a time in every boy or girl's life which is most crucial and the way they are handled during this delicate period will, in many instances, shape the type of men and women they become. In other words, the [die] is cast during this period . . . ." 14 S. Proc., Pt. 2, 1971 Sess., p. 652, remarks of Senator Jay W. Jackson. "I feel that young people at this stage of their lives have not adopted a life style of crime. And I think it's quite possible and I think that society ought to hope that through its rehabilitat[ion] efforts it can prevent young people who have committed one act, perhaps irrationally and injudiciously, that they have embarked on the wrong road, and that the right road is one in which they will see society in a different light." 14 S. Proc., Pt. 2, 1971 Sess., p. 735, remarks of Senator Lawrence J. Denardis. "It seems to me that we are moving backward when we do not give a young person a second chance. That's really what we are talking [about] here." 14 S. Proc., Pt. 2, 1971 Sess., p. 734, remarks of Senator Roger W. Eddy. "I think we are giving an opportunity to a sixteen or seventeen year old who is at the threshold. And just how he crosses that threshold and in what direction he takes after he crosses it, I think is most important to all of us people in the State

of Connecticut." 14 S. Proc., Pt. 2, 1971 Sess., p. 659, remarks of Senator Jay W. Jackson.

The legislature, however, was also concerned that certain defendants should be statutorily ineligible for youthful offender status. The act as initially drafted excluded only youths charged with class A felonies.[19] There was a proposed amendment to the youthful offender bill in 1971, however, which would have excluded youths charged with other serious crimes. The ensuing discussion on the Senate floor focused on the conflict between the rehabilitative concerns of the act and society's desire for harsh punishments for serious crimes. The ultimate conclusion reached by the 1971 legislature, as evidenced by the defeat of the amendment, was that the only charges serious enough to deny eligibility for youthful offender status ipso facto at that time were class A felonies.

It is rational, in light of the goals expressed by the legislature, to distinguish between those youths charged with murder after probable cause hearings and those charged with lesser crimes. A youth charged, after a hearing in probable cause, with having the intent to kill another person can be characterized reasonably as having crossed the threshold and chosen a direction in life incompatible with the lenient treatment available to youthful offenders. The legislature, therefore, rationally could have determined that the benefits of youthful offender status should not be available to such a defendant. It was consequently a legitimate legislative choice to exclude from the definition of a youthful offender

---

[19] Subsequent public acts amended § 54-76b to exclude from eligibility for youthful offender status youths charged with other serious crimes: Public Acts 1989, No. 89-383 amended the statute to exclude those charged with violations of General Statutes § 53a-70a; see footnote 17; and Public Acts 1995, No. 95-142 amended the statute to exclude those charged with violations of General Statutes § 53-21 (2) or of General Statutes §§ 53a-70, 53a-70b, 53a-71, 53a-72a, or 53a-72b. See footnote 17.

those defendants charged with class A felonies. " 'In exercising [the state's] police power the legislature has broad discretion, both in determining what the public welfare requires, and in fashioning legislation to meet that need.' *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, [supra, 167 Conn. 307]." *State* v. *Anonymous*, supra, 173 Conn. 418. The defendant's first due process claim, therefore, fails.[20]

As to his second due process claim, the defendant argues that because § 54-76b defines a "youthful offender" as one "who is charged with the commission of a crime which is not a . . . class A felony," a defendant who is ultimately acquitted of a class A felony would be prohibited from applying for the postverdict benefits of the youthful offender statutes. The denial of those benefits following such an acquittal, he claims, has no rational basis and therefore constitutes a due process violation. We agree with the defendant that a defendant who is convicted of a lesser included crime, but is acquitted of the class A felony that statutorily deprived him of youthful offender status, is unable to apply for postverdict benefits. We disagree, however, that that result violates the defendant's substantive due process rights.

As mentioned above, the legislature provided a variety of benefits to youths eligible to be adjudged youthful

---

[20] The defendant asks us to adopt the reasoning of the New York Court of Appeals in *People* v. *Drummond*, 40 N.Y.2d 990, 359 N.E.2d 663, 391 N.Y.S.2d 67 (1976), cert. denied sub nom. *New York* v. *Luis J.*, 431 U.S. 908, 97 S. Ct. 1706, 52 L. Ed. 2d 394 (1977), which held that the New York youthful offender statutes violated due process of law and were, therefore, unconstitutional. The New York Court of Appeals decision is inapposite, however, because it was scrutinizing a youthful offender scheme that involved a postverdict hearing to determine eligibility for postverdict benefits. In this postverdict hearing, the charging document determined eligibility despite an ultimate acquittal on the relevant charge. Connecticut's youthful offender scheme, however, does not offer a postverdict youthful offender hearing. When eligibility for youthful offender status is determined under Connecticut law, therefore, there is no such conflict between the charging document and the conviction.

offenders when it enacted the youthful offender statutes. Some benefits exist before and during trial; others exist subsequent to a determination that a defendant is guilty of being a youthful offender. Regardless of the timing of the benefits, however, the legislature has chosen to bestow or withhold these benefits as a whole, rather than on a piecemeal basis. It is entirely possible that the legislature decided that, in the best interests of our open public court system, any defendant tried as an adult and exposed to the public for trial should be sentenced as an adult, regardless of the crimes of which he or she is ultimately convicted. The legislature could have reasoned that conferring postverdict youthful offender benefits, such as a more lenient sentence, confidential records, and the right to hold office, on a defendant who had been tried and convicted in open court as an adult would damage society's perception of the fair administration of justice. Because there exists a rational basis for this legislative scheme; see *Caldor's, Inc.* v. *Bedding Barn, Inc.*, supra, 177 Conn. 314–15; we conclude that the legislature's decision to preclude a defendant from seeking the postverdict benefits of the youthful offender statutes if charged with, but acquitted of, one of the enumerated offenses that deny eligibility, but convicted of a lesser offense, does not violate the defendant's right to due process of law.[21]

B

The defendant additionally claims that the youthful offender statutes as enacted by the legislature violate

---

[21] In his brief, the defendant presents an argument that appears to be directed toward a procedural due process claim. In essence, he argues that a prosecutor has unbridled discretion to determine the crimes with which to charge a defendant. He claims that even if a subsequent probable cause hearing revealed that there was no probable cause to charge a defendant with murder—the charge for which he was statutorily denied youthful offender status—the defendant would still be *statutorily* barred from youthful offender status because he had been *charged* with murder. In such a situation, however, that statutory bar would no longer exist, and the defendant

his right to equal protection under the United States constitution.[22] In order to analyze the constitutionality of the youthful offender statutes on that basis, we must first detail the principles applicable to equal protection analysis. " '[T]he concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.' *Reynolds* v. *Sims*, 377 U.S. 533, [565] 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, [440] 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 578, 512 A.2d 893 (1986). The equal protection clause 'does not require absolute equality or precisely equal advantages . . . .' *Ross* v. *Moffitt*, 417 U.S. 600, 612, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.*, supra, 577–78. Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. *Ross* v. *Moffitt*, supra [612]; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U.S. 283, [293] 18 S. Ct. 594, 42 L. Ed. 1037 (1898); *Daily* v. *New Britain Machine Co.*, supra [577–78]; *State* v. *Reed*, 192 Conn. 520, 531, 473 A.2d 775 (1984). To determine whether a particular classification violates the guarantees of equal protection, the court must consider 'the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.' *Dunn* v. *Blumstein*, 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972). Where the classification impinges upon a fundamental

---

would be able to make another application to the trial court to determine his eligibility for youthful offender status.

[22] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

right or impacts upon an 'inherently suspect' group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. Id., 342; *Bruno* v. *Civil Service Commission*, 192 Conn. 335, 345, 472 A.2d 328 (1984); *Laden* v. *Warden*, 169 Conn. 540, 542, 363 A.2d 1063 (1975). On the other hand, where the classification at issue neither impinges upon a fundamental right nor affects a suspect group it 'will withstand constitutional attack if the distinction is founded on a rational basis.' *Laden* v. *Warden*, supra, 543; see also *McGinnis* v. *Royster*, 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1972); *Dandridge* v. *Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)." *Franklin* v. *Berger*, 211 Conn. 591, 594–95, 560 A.2d 444 (1989).

To implicate the equal protection clauses under the state and federal constitutions, therefore, it is necessary that the state statute in question, either on its face or in practice, treat differently persons standing in the same relation to it. As was the case with his due process claim, the defendant alleges two separate equal protection violations. He first asserts that the youthful offender statutes provide for disparate treatment of two individuals both of whom are ultimately convicted only of manslaughter although one is initially charged with murder. This is so, the defendant argues, because the individual who is charged with murder but acquitted of that charge cannot receive the postverdict benefits of being a youthful offender, while the individual who is initially charged with only manslaughter is eligible, in the court's discretion, to be treated as a youthful offender and receive the postverdict benefits. The classification the defendant complains of neither affects a suspect group nor impinges on a fundamental right. The defendant, therefore, must show that the statute bears no rational relation to some legitimate state purpose. See *State Management Assn. of Connecticut, Inc.*

v. *O'Neill*, 204 Conn. 746, 754, 529 A.2d 1276 (1987); *United Illuminating Co.* v. *New Haven*, 179 Conn. 627, 640, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 1015 S. Ct. 45, 66 L. Ed. 2d 5 (1980).

"Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." (Internal quotation marks omitted.) *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services*, 215 Conn. 292, 300, 576 A.2d 1259 (1990). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement [Board]* v. *Fritz*, 449 U.S. 166, 174, 179 [101 S. Ct. 453, 66 L. Ed. 2d 368] (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 [101 S. Ct. 715, 66 L. Ed. 2d 659] (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne* v. *Cleburne Living Center, Inc.*, [supra, 473 U.S. 446]." *Nordlinger* v. *Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

Our analysis of this equal protection claim of the defendant mirrors our analysis under the defendant's first due process claim because the fundamental concern of both claims is the disparate treatment given to defendants, between the ages of sixteen and eighteen, who are charged with murder and to those who are charged with manslaughter. The due process argument is that such a distinction itself has no rational basis, while the equal protection argument cites the comparison with another person allegedly similarly situated to make basically the same claim. "In areas of social and economic policy, a statutory classification that neither

proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is *any reasonably conceivable* state of facts that could provide a rational basis for the classification." (Emphasis added; internal quotation marks omitted.) *Broadley* v. *Board of Education*, 229 Conn. 1, 8–9, 639 A.2d 502 (1994). Assuming arguendo that the two categories of defendants identified by the defendant are similarly situated with respect to the statute, and relying on our analysis under the defendant's first due process claim, we conclude that a rational basis does exist for this classification, which results in disparate treatment for those charged with murder and those charged with lesser crimes, and that the classification bears a reasonable relationship to the legislative goal of the youthful offender statutes.

In his second equal protection claim, the defendant appears to claim that he is similarly situated to a child[23] whose age is between fourteen and sixteen and who is charged with similar crimes. He argues that children transferred to and tried in adult criminal court have the opportunity to resume juvenile status if they are ultimately acquitted of the charge for which they were transferred, but that a similar opportunity to reapply for youthful offender status is denied to him.

However, the factual predicate upon which the defendant relies for this argument—that children may resume juvenile status if they are ultimately acquitted of the charge for which they were transferred—is not true. In another case that we decide today, *State* v. *Morales*, 240 Conn. 727, 694 A.2d 758 (1997), we conclude that a child does not resume juvenile status if acquitted of the specific statutory offense for which he

---

[23] General Statutes § 46b-120 defines "child" as "any person under sixteen years of age."

was transferred.[24] With respect to the defendant's claim, therefore, both children and youths are treated similarly. The defendant's equal protection claim, therefore, must fail.

## II

The defendant's final claim on appeal is that the trial court abused its discretion when it refused to admit evidence regarding the victim's alleged gang affiliation and the gang's reputation for violence. "It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. *State v. Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. *State v. Avis*, 209 Conn. 290, 298, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989)." (Internal quotation marks omitted.) *State v. Bruno*, 236 Conn. 514, 549, 673 A.2d 1117 (1996).

The defendant challenges the trial court's rulings that excluded evidence concerning the victim's affiliation with a gang, i.e., testimony that the victim was a gang member and that the gang was violent and had access to guns. The defendant argues that this evidence was relevant to his belief that the victim had deadly force at his command,[25] although the victim himself was not using deadly force, and that this belief goes to his self-defense claim. The trial court ruled that because the defendant had testified that it was the victim whom he feared and that the victim was the person he shot, evidence concerning the other gang members' tenden-

[24] We specifically conclude that the phrase "the charge for which he was transferred" in the last sentence of General Statutes § 46b-127 includes not only the specific statutory offense for which a child was transferred but also any lesser included offenses.

[25] The defendant testified that he saw a gun in the hands of one of the victim's fellow gang members.

cies for violence was not relevant to the defendant's claim. After a thorough review of the record, we cannot say that the trial court abused its discretion in excluding the defendant's proffered evidence on the basis of its irrelevance to the defendant's self-defense claim.

The judgment is affirmed.

In this opinion the other justices concurred.

BORDEN, J., concurring. I agree with and join the majority opinion. I write separately only with regard to the defendant's equal protection claim. In my view, it is not necessary to engage in the inquiry of whether the particular classification at issue has a rational basis[1] because the defendant cannot surmount the threshold of equal protection analysis, namely, that he is similarly situated to the person with whom he is to be compared.

It is axiomatic that the equal protection clause only applies where the litigant before the court first establishes that he is similarly situated, with respect to the statutory scheme claimed to violate the clause, to someone else who is treated differently from him under the statutory scheme. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 755, 687 A.2d 506 (1997). If he is so similarly situated, the court must then determine whether the classification effectuated by the statutory scheme survives the applicable level of scrutiny. Id., 755–57.

As the majority opinion makes clear, the defendant seeks to compare himself to the individual who is initially charged only with manslaughter and who is, therefore, eligible for youthful offender treatment. The defendant, however, is not similarly situated, with

---

[1] By joining the majority opinion, I also agree with and join its rational basis analysis. The purpose of this concurrence is simply to underscore my conclusion that it is not necessary to engage in that analysis.

respect to the youthful offender statutory scheme, to such an individual.

The appropriate time for this inquiry is not, as the defendant assumes, at the end of the process, when he was acquitted of murder but convicted of manslaughter. The appropriate time is at the beginning of the process, when he was charged, because that is when the court was required to determine whether the youthful offender statutory scheme was to be invoked. That statutory scheme provides a panoply of protections for one who falls within it, and those protections include pretrial, trial and posttrial provisions. Therefore, it would be inappropriate to determine whether defendants are similarly situated with respect to that scheme only at its end point.

When the defendant was charged with murder, the state had evidence establishing probable cause that he had committed not only manslaughter, but murder. A defendant against whom there is sufficient evidence to charge him with murder is not, in my view, similarly situated to a defendant against whom there is only sufficient evidence to charge him with manslaughter. The defendant's equal protection claim founders, therefore, at this threshold stage.