984 A.2d 1177 (2009)
51 Conn.Sup. 342
STATE of Connecticut
v.
R.W.[1]
No. CR-08-068510.
Superior Court of Connecticut, Judicial District of Ansonia-Milford.
August 21, 2009.
*1179 Frank J. Halloran, public defender, for the defendant.
Charles M. Stango, assistant state's attorney, for the state.
RODRIGUEZ, J.
In this case of first impression, the court is obliged to resolve whether the transfer of the defendant's case under General Statutes § 54-76c from the docket for youthful offender matters to the regular criminal docket of the Superior Court requires the court to exercise its independent discretion prior to transferring the case to satisfy all due process imperatives enshrined in both the fourteenth amendment to the United States constitution and in article first, § 8, of the constitution of Connecticut. For the reasons more fully elucidated, the court concludes that due process requires it to provide notice and hold a hearing to determine independently whether the state's motion to transfer this case to the regular criminal docket is appropriate.
The following facts and procedural history are relevant to the resolution of this issue. In November, 2008, the defendant, R.W., was arrested by the West Haven police department for allegedly stealing a camera from his neighbors, for whom he had been doing some housework during that time. Being seventeen years old at the time, the defendant was charged, as a youthful offender, with burglary in the third degree, conspiracy to commit burglary in the third degree and larceny in the fourth degree. At his arraignment on November 24, 2008, it was noted that the defendant was on probation for a separate youthful offender determination that took place in 2007, and bond was set. On January 5, 2009, the public defender's office was appointed to represent the defendant in this case.
Subsequently, the state filed a motion to transfer the case from the youthful offender docket to the regular criminal docket pursuant to § 54-76c.[2] During two separate *1180 judicial pretrials, the court considered the state's argument that it had unbridled discretion to transfer the case and that the court was absent any discretion in granting the state' motion unless it concluded that there was not probable cause. On April 22, 2009, with all parties present and represented, the court entered, sua sponte,[3] the following order: "The court ORDERS that the parties submit briefs on the issue of whether the defendant enjoys a vested liberty interest in youthful offender status and, to the extent that the court decides such a liberty interest has vested, to determine whether § 54-76c(b)(1) is rendered constitutionally infirm under either the fourteenth amendment to the United States constitution or under article first, § 8, of the constitution of Connecticut for its failure to accord the *1181 defendant adequate due process prior to the deprivation of that right. See Kent v. United States, 383 U.S. 541, 556-58, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (state required to afford defendant due process hearing prior to discretionary deprivation of vested interest in juvenile status); Hughes v. State, 653 A.2d 241, 250 (Del. 1994) (amendment to Delaware's transfer statute held unconstitutional because juvenile status vested prior to transfer to criminal court); cf. State v. Angel C., 245 Conn. 93, 120-21, 715 A.2d 652 (1998) (automatic transfer statute upheld against due process challenge because juvenile defendants in that case never enjoyed, nor could ever qualify for, a vested liberty interest in juvenile status). More specifically, the parties are ordered to address the following questions: what events are necessary for youthful offender status to vest in an individual; has youthful offender status vested in this case; if youthful offender status has vested in the defendant, what procedural due process safeguards are required prior to deprivation of that status under the federal and state constitutions; and, whether, in light of the foregoing, § 54-76c(b)(1) can be harmonized with all federal and state due process imperatives. The parties should provide separate analysis under both the federal and state constitutions where appropriate.
"The state shall file the requisite brief on or before June 3, 2009. The defendant shall file a response on or before July 1, 2009. Any reply brief by the state shall be filed on or before July 31, 2009." (Emphasis in original.)
Pursuant to this schedule, the state filed its main brief on May 27, 2009, and the defendant filed his brief on June 30, 2009. The state declined the opportunity to file a reply brief. Contemporaneous with the briefing of these issues, the Appellate Court released its opinion in State v. Fernandes, 115 Conn.App. 180, 971 A.2d 846 (2009), which held that an analogous statute governing discretionary transfers from the juvenile docket to the regular criminal docket required a due process hearing prior to transferring the case. In light of this precedent, the court issued a judicial notice on July 8, 2009, offering both parties the opportunity to address the impact of Fernandes on this case, though requiring that such supplemental briefs be filed by July 27, 2009. The state declined this opportunity; the defendant filed a brief, noting that he had addressed Fernandes in his prior submission and that he would rest on the arguments contained therein. Oral argument was then heard by the court on August 6, 2009.

I

DISCUSSION
The state advances two arguments in connection with its motion to transfer the defendant from the youthful offender docket to the regular criminal docket of the Superior Court. First, the state argues that the legislative history of § 54-76c, as amended by Public Acts 2005, No. 05-232 (P.A. 05-232), clearly shows the intent to grant the prosecutors unbridled discretion to make the transfer here at issue. Second, the state argues that the defendant does not enjoy a vested liberty interest because § 54-76c denies youthful offender status ab initio, precluding such rights from ever vesting. The defendant argues, however, that the statutorily conferred benefits he enjoys under the youthful offender statutes constitute liberty interests that have vested and which may not be retracted absent a due process hearing. In this respect, the defendant distinguishes the type of automatic transfer statute that the state refers to from the discretionary transfer provisions that come into play once a defendant is placed properly *1182 on the youthful offender docket by operation of § 54-76c. The court agrees with the defendant.
The requirements for a successful due process claim are well established. "The fourteenth amendment to the United States constitution provides that the State [shall not] deprive any person of life, liberty, or property, without due process of law.... In order to prevail on his due process claim, [a defendant] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law.... As a threshold matter, therefore, [the defendant] must show that [he has] a vested liberty interest in [his youthful offender] status that is cognizable under the due process clause.... Liberty interests protected by the Fourteenth Amendment may arise from two sourcesthe due process clause itself and the laws of the states." (Citations omitted; internal quotation marks omitted.) State v. Fernandes, supra, 115 Conn.App. at 183, 971 A.2d 846. Indeed, "[o]nce a state provides its citizens with certain statutory rights beyond those secured by the constitution itself, the constitution forbids the state from depriving individuals of those statutory rights without due process of law." (Internal quotation marks omitted.) Id., at 184, 971 A.2d 846. Accordingly, the court must first determine the threshold question as to whether the defendant enjoys a liberty interest in youthful offender status and then ascertain whether that interest has vested.
In this case, the defendant concedes that his liberty interest in youthful offender status does not emanate directly from the state or federal constitutions but is instead conferred by the laws of Connecticut. See, e.g., State v. Anonymous, 173 Conn. 414, 417-18, 378 A.2d 528 (1977) ("[a]ny [special treatment] accorded to a juvenile because of his [or her] age with respect to proceedings relative to a criminal offense results from statutory authority, rather than from any inherent or constitutional right"). Nevertheless, although the protections afforded to youthful offenders are statutorily conferred, they are significant. By way of example, "all proceedings, except the motion for investigation of eligibility, are private. General Statutes § 54-76h. If confined, a youth is segregated from other defendants over the age of eighteen years before and during trial and before sentencing. General Statutes § 54-76h. A youthful offender is also eligible to receive a more lenient sentence; compare General Statutes § 54-76j, with, e.g., General Statutes § 53a-35a; is not disqualified from later holding public office, and does not forfeit any right or privilege to receive a license granted by a public authority. General Statutes § 54-76k. Moreover, a youthful offender is not considered a criminal, and a determination that a defendant is a youthful offender is not deemed a conviction. General Statutes § 54-76k. A youthful offender's records are kept confidential; General Statutes § 54-76l; and are automatically erased when such person attains twenty-one years of age, provided such person has not subsequent to being adjudicated a youthful offender been convicted of a felony ... prior to [having] attained such age." (Internal quotation marks omitted.) State v. Matos, 240 Conn. 743, 750-52, 694 A.2d 775 (1997). In view of these statutes, it is clear that the benefits they confer are significant.
This is critical because our appellate courts have consistently noted that, due to the special rights and immunities afforded by such statutes, the decision to withdraw these types of statutory protections "is a *1183 critically important stage in the adjudicatory process." (Internal quotation marks omitted.) State v. Fernandes, supra, 115 Conn.App. at 184, 971 A.2d 846, citing Kent v. United States, supra, 383 U.S. at 560-61, 86 S.Ct. 1045. The court in Fernandes, by way of example, held that the statutory protections afforded to juveniles under General Statutes §§ 46b-124, 46b-146 and 46b-141, which ensure that juvenile "proceedings are largely confidential, subject to erasure, and subject to a maximum commitment of four years," constitute a liberty interest in juvenile status. State v. Fernandes, supra, at 188, 971 A.2d 846. Similarly, the United States Supreme Court has explained that juvenile statutes that "confer special rights and immunities" on eligible defendants constitute protected liberty interests where juveniles are "shielded from publicity," "may not be jailed along with adults," "may be detained, but only until [they are] 21 years of age," and are "protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against [them] in subsequent proceedings, and disqualification for public employment." Kent v. United States, supra, at 556-57, 86 S.Ct. 1045. Accordingly, due to the substantial benefits bestowed on eligible defendants in receiving youthful offender status under § 54-76h (private proceedings and segregated confinement), § 54-76k (no criminal liability and retention of ability to hold public office) and §§ 54-76l and 54-76o (record confidentiality and erasure), and in view of the relevant precedent holding such privileges to constitute a cognizable liberty interest, the court concludes that the statutory benefits afforded to the defendant in this case constitute a liberty interest in youthful offender status for purposes of due process analysis.
Having concluded that the defendant enjoys a protected liberty interest, the court next considers whether that interest has vested in the defendant. Courts that have considered this issue have focused their inquiry on where the relevant statute rests original jurisdiction[4] conferring the special rights and immunities. See, e.g., id., at 556, 86 S.Ct. 1045 ("The Juvenile Court is vested with `original and exclusive jurisdiction' of the child. This jurisdiction confers special rights and immunities."); State v. Fernandes, supra, 115 Conn.App. at 188, 971 A.2d 846 ("[t]his original jurisdiction creates a liberty interest because the child has an interest in continuing to proceed within the juvenile docket"). In this case, § 54-76c makes pellucid that original jurisdiction over defendants between the ages of sixteen and eighteen who are charged with specific classes of crime resides in the youthful offender docket until a court determines that a defendant is not eligible for youthful offender status or until a prosecutor makes a motion for transfer of the case and the court orders such a transfer. Thus, this statute is directly analogous to the statute in Fernandes, which likewise *1184 found the statutory rights and immunities conferred in that case to have vested because original jurisdiction over similarly defined defendants rested on the juvenile docket. See id.
In addition to the text of the statute being clear that original jurisdiction over the qualifying youthful offenders rests on the youthful offender docket, the legislative history is equally clear on this point. By way of illustration, Representative Michael P. Lawlor, a sponsor of Substitute House Bill No. 5215, which became PA. 05-232, explained the effect of the new law in the following manner, stating that "[sixteen and seventeen year olds] enter the court system as adults today and have the ability to apply for youthful offender status, which is a decision that's made later. Under this proposal, they would enter as youthful offenders and the subsequent decision would be whether or not to treat them as adults." 48 H.R. Proc, Pt. 25, 2005 Sess., pp. 7667-68. In the same vein, Representative Robert Fair, another sponsor of the bill, explained that "what this Amendment seeks to do is continue that process of having a youthful offender application except, instead of having to do the application, every juvenile will essentially, almost every juvenile between the ages of 16 and 18 will be treated as a youthful offender. And then the prosecutor will have the option of pulling the case out of the [youthful offender] process and treating it as an adult case." Id., pp. at 7656-57. Thus, both the text of § 54-76c and its legislative history confirm that original jurisdiction over children between the ages of sixteen and eighteen who are not charged with a specific type of felony rests with the youthful offender docket, which, in turn, vests those youths with a liberty interest in their youthful offender status. See State v. Fernandes, supra, 115 Conn.App. at 188, 971 A.2d 846 ("[t]his original jurisdiction creates a liberty interest because the child has an interest in continuing to proceed within the juvenile docket").
Although the state relies on, State v. Angel C., supra, 245 Conn. at 104, 715 A.2d 652, for the proposition that similar transfer provisions do not offend due process imperatives, that argument is easily defenestrated because the discretionary transfer provision of § 54-76c that is at issue here stands in stark contradistinction to the automatic transfer provision that was at issue in Angel C. In that case, our Supreme Court held that the liberty interests conferred on juveniles did not vest in the defendants there because they were charged with specifically enumerated felonies that automatically deprived those defendants of their eligibility for juvenile status. See, id., at 109-10, 715 A.2d 652. Ergo, because the statute in Angel C. was "an automatic, mandatory transfer statute with the transfer based exclusively on the age of the defendant and the offense charged"; id., at 109, 715 A.2d 652; "[t]he applicability of Kent [could not] be expanded... beyond the scope of discretionary transfer statutes to mandatory transfer statutes." Id., at 108, 715 A.2d 652. In other words, the automatic transfer statute in Angel C. essentially operated to eliminate by definition juveniles who committed serious crimes, preventing such defendants from qualifying for juvenile status in the first place. As previously noted, however, the statutory provision that is at issue in this case does not involve an automatic transfer provision that prevents the subject liberty interests from ever vesting in a defendant, but involves, instead, a discretionary transfer statute that vests the subject liberty interests in eligible defendants. Accordingly, Angel C. is inapposite to the question of whether the defendant's liberty interests in this case have vested.
*1185 In view of the relevant case law, the text of § 54-76c and the pertinent legislative history, the court concludes that original jurisdiction over the defendant in this case rests on the youthful offender docket and that the defendant is not automatically precluded from youthful offender status by virtue of an automatic transfer provision like the one at issue in Angel C. The court, therefore, holds that the liberty interests enjoyed by the defendant in youthful offender status have vested.
The court's conclusion that the defendant enjoys a vested liberty interest is further buttressed by the ruling of our Appellate Court in Fernandes, a case that is highly instructive and that merits further attention at this time. In that case, the defendant was transferred from the juvenile docket to the regular criminal docket of the Superior Court to face one count of assault in the second degree as an accessory. Although the defendant's attorney moved the trial court to exercise its discretion not to transfer the case, the court declined to do so, explaining that "[u]nfortunately, the statute doesn't convey any discretion on the Juvenile Court. Discretion is posted solely in that of the... state's attorney's office...." (Internal quotation marks omitted.) State v. Fernandes, supra, 115 Conn.App. at 188, 971 A.2d 846. On appeal, however, the Appellate Court noted that statutes vesting, juveniles "with the right to juvenile status ... [constitute] a liberty interest, of which the juvenile may not be deprived without due process, i.e., notice and a hearing." Id., at 185, 971 A.2d 846. The court then determined that subsection (b) of General Statutes § 46b-127 (juvenile transfer statute) "is exceptionally distinct from the mandatory language of subsection (a)" because subsection (b) provides that the case shall be transferred only "[u]pon motion of a juvenile prosecutor and order of the court...." (Citation omitted; internal quotation marks omitted.) State v. Fernandes, supra, at 186-87, 971 A.2d 846. Next, the court concluded that the plain language of General Statutes § 46b-120 et seq. rests on the juvenile docket original jurisdiction over children between the specified ages who are charged with crimes other than those specifically enumerated, and held that such original jurisdiction created a liberty interest due to the benefits commensurate with adjudication on the juvenile docket. State v. Fernandes, supra, at 187-88, 971 A.2d 846. The result of these determinations was that the Appellate Court reversed the judgment of the trial court because the trial court failed to exercise its discretion to hold a hearing and decide whether the transfer should take place. Id., at 188-89, 971 A.2d 846.
In light of this precedent, the court hastens to point out the similarities between the transfer provisions in § 46b-127 (the juvenile transfer statute at issue in Fernandes) and those encapsulated in § 54-76c (youthful offender transfer statute). Like the juvenile transfer statute, the youthful offender statute contains an automatic transfer provision in its subsection (a) that defines who does not qualify for youthful offender status and must, therefore, be tried on the regular criminal docket. Compare General Statutes § 46b-127(a) (court shall transfer to regular criminal docket case of any juvenile charged with class A or B felony if offense committed after child reached fourteen years of age) with General Statutes § 54-76c(a) (defendant appearing to be youth shall be presumed eligible to be adjudged youthful offender unless defendant charged with enumerated class of felony or court learns defendant does not meet age requirement for youthful offender status). Thus, both statutes begin with a provision that automatically deprives a defendant of their respective *1186 status if the defendant fails to meet the age criteria or is charged with specifically enumerated classes of crime. It is because the relevant liberty interests never vest in defendants transferred under these provisions that our Supreme Court has upheld such automatic transfer statutes against due process challenges in the past. See, e.g., State v. Angel C., supra, 245 Conn. at 120-21, 715 A.2d 652 (§ 46b-127[a] constitutional because juvenile defendants there never enjoyed, nor could ever qualify for, liberty interest in juvenile status).
Both statutes, however, also contain discretionary transfer provisions that provide the state's attorney with discretion to transfer a case to the regular criminal docket. Compare General Statutes § 46b-127(b) ("[u]pon motion of a juvenile prosecutor and order of the court, the case of any child charged with the commission of a class C or D felony or an unclassified felony shall be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, provided such offense was committed after such child attained the age of fourteen years and the court finds ex parte that there is probable cause to believe the child has committed the act for which he is charged") with General Statutes § 54-76c(b)(1) ("[u]pon motion of the prosecuting official and order of the court, the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, shall be transferred from the youthful offender docket to the regular criminal docket of the Superior Court, provided the court finds that there is probable cause to believe the defendant has committed the act for which he or she is charged"). It was this discretionary transfer provision that the court in Fernandes held to require a due process hearing before the transfer could be effectuated; State v. Fernandes, supra, 115 Conn. App. at 188, 971 A.2d 846; and it is, therefore, difficult to perceive why § 54-76c(b) would not likewise require a due process hearing before a defendant already on the youthful offender docket can be transferred to the regular criminal docket.
Moreover, the court's understanding that the transfer provisions in § 54-76c are nearly identical to those in § 46b-127 is further buttressed by the legislative history. In this regard, it is noteworthy that Representative Lawlor explained the bill in the following manner:
"In fact, the language is virtually identical to the language adopted ten years ago as relates to 14- and 15-year-olds, where the prosecutors in those cases do have the sole discretion to treat felonies in juvenile court, transfer them to the adult court.
"That mechanism has survived ten years unchallenged. I don't believe there has ever been any type of an appeal, certainly not a successful appeal of one of those decisions.
"And it is our intent that a prosecutor, in the case of felony charges, would have complete discretion to treat, by filing, would activate this, would sort of exercise the discretion by filing a motion with the court and that the court, assuming that there's probable cause for the charges etc., would, would automatically transfer this to the normal adult docket, which in most courthouses would simply be a different courtroom on a different day." 48 H.R. Proc., supra, at pp. 7629-30; see also id., at p. 7636 (Representative Lawrence F. Cafero, Jr., explaining the bill by stating, "I realize they are identical to what we currently have with regard to transferring from juvenile court"). Thus, both the text and the legislative history of the two transfer provisions confirm that § 54-76c(b) is "identical" or "virtually identical" to *1187 § 46b-127(b) in that they both attempt to give the state's attorney the unbridled discretion to transfer defendants from one docket that affords greater privileges to its defendants to the regular criminal docket at any time during the case that the state's attorney sees fit. The problem is that the tenets of due process enshrined in our federal and state constitutions do not permit that level of discretion to be accorded to the state's attorneys if it would result in the deprivation of a previously vested liberty interest without first providing notice and holding a hearing to determine the appropriateness of such a transfer.
Accordingly, although Fernandes reviewed a statute different from the one in this case, the court nevertheless takes the view that Fernandes is dispositive of the issue presented here. Both the juvenile and youthful offender adjudication statutes provide similar benefits to those adjudicated under them (e.g., confidentiality, record erasure, limited terms of incarceration). Additionally, both statutes create original jurisdiction in their respective dockets, which vests those liberty interests in juvenile and youthful offender defendants. Finally, both statutes have discretionary transfer provisions that allow the state's attorney to transfer such defendants to the regular criminal docket upon order of the court. It is because the juvenile and youthful offender statutes are nearly identical and because the analysis in Fernandes is nearly identical to that required here that the court concludes that Fernandes is binding precedent in this case that cannot be meaningfully distinguished and to which adherence is required.
Having concluded that the defendant enjoys a vested liberty interest in youthful offender status, the court next resolves whether § 54-76c is constitutionally infirm or whether it accords an opportunity for the court to exercise its independent discretion in deciding whether a transfer to the adult docket is merited in a given case. To do so requires the court to interpret the statute. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.... When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter...." (Internal quotation marks omitted.) State v. Fernandes, supra, 115 Conn.App. at 186, 971 A.2d 846.
With these principles in mind, the court begins with the text of the statute. General Statutes § 54-76c(b)(1) provides in relevant part: "Upon motion of the prosecuting official and order of the court, the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, shall be transferred from the youthful offender docket to the regular criminal docket of the Superior Court, provided the court finds that there is probable cause to believe the defendant has committed the act for which he or she *1188 is charged...." On its face, this statutory provision is open to an interpretation that the court is limited to reviewing the transfer order to ensure probable cause alone, which the state argues is supported by the legislative history stating that the legislature intended to provide state's attorneys with unbridled discretion to transfer such cases. Yet, such a limited role for the court seems strained, given the requirement that the transfer issue only "[u]pon motion of the prosecuting official and order of the court" and given that a determination of probable cause would have been made previously at the time of the youth's arraignment. Indeed, the court in Fernandes held that a nearly identical provision in § 46b-127(b) was ambiguous as to the level of discretion accorded to the court in considering a motion to transfer and ultimately relied on that statute's legislative history to conclude that § 46b-127 was intended to model its transfer procedure on the transfer procedures employed in the adult courts, which do not constrain judges to consider the question of probable cause alone when deciding whether to transfer a case. State v. Fernandes, supra, 115 Conn.App. at 187-88, 971 A.2d 846.
In light of the textual ambiguity contained in § 54-76c, the court next consults the statute's legislative history. Here, too, the record is nebulous. Although Representative Lawlor stated that it was the legislature's intent to accord "complete discretion" to the prosecutors in transferring cases under § 54-76c; 48 H.R. Proc, supra, at p. 7630; Representative Lawlor also stated that this statute was intended to be "virtually identical" to § 46b-127 (b); id., at p. 7629; which the court in Fernandes found to encompass a broader level of discretion for a court reviewing a transfer order. State v. Fernandes, supra, 115 Conn.App. at 187, 971 A.2d 846. Thus, neither the text of § 54-76c(b)(1) nor its legislative history is particularly helpful in determining the appropriate level of discretion to be employed by a court in reviewing a transfer order under this statute.
Notwithstanding this ambiguity, however, the court concludes that when it reviews a transfer order pursuant to § 54-76c(b)(1), it is obligated to exercise the same discretion that is accorded to juvenile defendants being transferred under § 46-b-127 (b). In the first instance, the court notes that "[i]f literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity." Sassone v. Lepore, 226 Conn. 773, 785, 629 A.2d 357 (1993); see also Roth v. Weston, 259 Conn. 202, 234, 789 A.2d 431 (2002) (judiciary may "`delineate a procedural scheme for the protection of constitutional rights where statutory protections fall short or are non-existent.'"), superseded on other grounds by Fish v. Fish, 285 Conn. 24, 939 A.2d 1040 (2008) (en banc). Here, allowing for a court to exercise its independent judgment in determining whether a youthful offender should be transferred to the regular criminal docket is necessary to comport with the due process requirements articulated in Fernandes and in Kent. See State v. Fernandes, supra, 115 Conn.App. at 184, 971 A.2d 846 ("[d]ue process requires notice of the pending transfer and the opportunity for a hearing"); see also Kent v. United States, supra, 383 U.S. at 556-58, 86 S.Ct. 1045.
Additionally, this interpretation ensures that there is uniformity in the transfer provisions for juveniles, youthful offenders and adults. See Field Point Park Assn., Inc. v. Planning & Zoning Commission, 103 Conn.App. 437, 440-41, 930 *1189 A.2d 45 (2007) ("[w]hen more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results" [internal quotation marks omitted]). In addition to raising serious constitutional questions, the interpretation recommended by the state would lead to the bizarre result that youthful offenders be afforded less due process than either juveniles or adults. The court declines to reach such a conclusion. Accordingly, this court concludes that § 54-76c provides it with discretion to determine whether the defendant should be transferred from the youthful offender docket to the regular criminal docket of the Superior Court.

II

CONCLUSION
For the reasons set forth previously, the state's motion to transfer the defendants from the youthful offender docket to the regular criminal docket of the Superior Court is continued until such time as the court can conduct a hearing to determine the appropriateness of that transfer. It is so ordered.
NOTES
[1] Pursuant to General Statutes § 54-76c(b)(1), the defendant's name is kept confidential.
[2] General Statutes § 54-76c provides: "Eligibility to be adjudged a youthful offender. Transfer of cases, (a) In any case where an information or complaint has been laid charging a defendant with the commission of a crime, and where it appears that the defendant is a youth, such defendant shall be presumed to be eligible to be adjudged a youthful offender and the court having jurisdiction shall, but only as to the public, order the court file sealed, unless such defendant (1) is charged with the commission of a crime which is a class A felony or a violation of section 14-222a, subsection (a) of section 14-224, section 14-227a or 14-227g, subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, except a violation involving consensual sexual intercourse or sexual contact between the youth and another person who is thirteen years of age or older but under sixteen years of age, or (2) has been previously convicted of a felony in the regular criminal docket of the Superior Court or been previously adjudged a serious juvenile offender or serious juvenile repeat offender, as defined in section 46b-120. Except as provided in subsection (b) of this section, upon motion of the prosecuting official, the court may order that an investigation be made of such defendant under section 54-76d, for the purpose of determining whether such defendant is ineligible to be adjudged a youthful offender, provided the court file shall remain sealed, but only as to the public, during such investigation.

"(b) (1) Upon motion of the prosecuting official and order of the court, the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, shall be transferred from the youthful offender docket to the regular criminal docket of the Superior Court, provided the court finds that there is probable cause to believe the defendant has committed the act for which he or she is charged. The defendant shall be arraigned in the regular criminal docket of the Superior Court by the next court business day following such transfer, provided any proceedings held prior to the finalization of such transfer shall be private and shall be conducted in such parts of the courthouse or the building wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes. The file of any case so transferred shall remain sealed until the end of the tenth working day following such arraignment, unless the prosecuting official has filed a motion pursuant to subdivision (2) of this subsection, in which case such file shall remain sealed until the court makes a decision on the motion.
"(2) A prosecuting official may, not later than ten working days after such arraignment, file a motion to transfer the case of any defendant who is a youth and is charged with the commission of a felony, other than a felony set forth in subsection (a) of this section, from the regular criminal docket of the Superior Court to the youthful offender docket for proceedings in accordance with the provisions of sections 54-76b to 54-76n, inclusive. The court sitting for the regular criminal docket of the Superior Court shall, after hearing and not later than ten working days after the filing of such motion, decide such motion."
[3] It is observed that "[a] trial court's duty of independent inquiry ... arises in situations implicating the fundamental fairness of the proceedings and the defendant's core constitutional trial rights." State v. Sullivan, 244 Conn. 640, 650 n. 14, 712 A.2d 919 (1998), overruled in part on other grounds by State v. DeJesus, 270 Conn. 826, 844 n. 18, 856 A.2d 345 (2004). Accordingly, because the defendant's right not to have a statutorily conferred liberty interest revoked without notice and a hearing implicates his fundamental right to due process; see State v. Fernandas, 115 Conn.App. 180, 184, 971 A.2d 846 (2009) ("the constitution forbids the state from depriving individuals of those statutory rights [it confers] without due process of law" [internal quotation marks omitted]); the court raised this issue sua sponte.
[4] As noted by the court in State v. Angel C, supra, 245 Conn. at 108 n. 17, 715 A.2d 652: "Connecticut has a unified court system. All criminal and civil matters fall within the subject matter jurisdiction of the Superior Court. Consequently, we have concluded that the issue of juvenile `jurisdiction' is not a question of subject matter jurisdiction, but rather more a question of venue. State v. Kelley, 206 Conn. 323, 331-32, 537 A.2d 483 (1988). This is unlike other states where there is a transfer of actual jurisdiction between independent courts. We refer to the concept of the rights that arise upon the commitment of a case to the juvenile docket in terms of jurisdiction vesting in the juvenile court, for the sake of convenience in comparing our conclusion to that of other jurisdictions because the concept of venue is inadequate to make this comparison." Similarly, the court likewise employs the jurisdictional language for the sake of comparison alone.